# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

IN RE: GENERAC SOLAR POWER SYSTEMS
MARKETING SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

This Document Relates to All Cases

MDL No. 3078
Master Case No. 23-md-3078

JURY TRIAL DEMANDED

## CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs Robert Ammon, Marcia Baltimore, Nicole Kibert Basler, John Bettorf, Paul Cartmell, Steve Cothren, Geoff Edwards, Miles Fawcett, Joel Galarza, Melissa Gibson, Daniel Haak, Christopher Helmers, Kevin Hemphill, Albert Kates, Craig Lauder, Kathryn Locatell, Jodi Matas, Dustin Moon, Lori Morse, Adam Plichta, Jason Poston, Anita Richardson, Michael Shirk, Allan Slater, Carolyn Slusher, Rabia Stevenson, Beverly Taylor, Margaret Venema, Kerri Vincent, James Ward, and Mark Wasserman ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action against Defendants Generac Power Systems, Inc. and Generac Holdings, Inc. ("Generac" or "Defendants") and allege the following based on personal knowledge as to themselves, and as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## NATURE OF THE ACTION

1.     This action concerns clean energy management systems designed and manufactured by Generac, which contain a defective component[1] and were subsequently sold to consumers across the United States.

_____

[1] Upon information and belief, the defective component of the PWRcell consists of the SnapRS connectors. There are three models of SnapRS connector components, (the 801, the 801A, and

2.     Generac has provided consumers "Affordable Power Solutions for 60 years" and is the self-proclaimed "#1 manufacturer of home backup generators."[2] Generac "manufactures the widest range of power products in the marketplace including portable, residential, commercial and industrial generators."[3]

3.     Generac's offerings include "backup and prime power generation systems for residential and commercial & industrial (C&I) applications, solar + battery storage solutions, energy management devices and controls, advanced power grid software platforms & services, and engine & battery-powered tools and equipment."[4] Generac purports to "protect the things that power your life by providing quality, affordable power solutions."[5] As of August 2022, Generac's net sales (LTM) were $4.4 billion.[6]

4.     Generac represents itself as being on the cutting edge of the energy market and purportedly seeks to provide cost-efficient and environmentally sustainable solutions to its customers.

5.     To its investors, Generac claims that it "is developing and launching innovative clean energy products that not only increase and optimize the amount of clean energy produced, stored and utilized by homeowners, but help to maximize customer savings."[7]

---

the 802). Upon information and belief, all three models contain the same or a similar design and/or manufacturing defect.

[2] *About Us*, Generac, https://www.generac.com/about-us (last visited August 29, 2023).

[3] *Id.*

[4] *Investor Relations*, Generac, https://investors.generac.com/ (last visited August 29, 2023).

[5] *About Us*, Generac, https://www.generac.com/about-us (last visited August 29, 2023).

[6] *Investor Presentation – August 2022*, Generac, https://investors.generac.com/static-files/a9f36c1c-9836-436b-ae20-84bdb21b3b62 (last visited August 29, 2023).

[7] *Environmental, Social, and Governance Report 2021*, Generac, https://investors.generac.com/static-files/edaf815c-9f4f-4453-8b1e-0f61f9175255 (last visited August 29, 2023).

2844925.1

6.     As a part of its clean energy offerings, Generac manufactures the PWRcell system (the "System"), which it represents as "the complete clean energy system."[8] According to Generac, "The PWRcell system is not just a powerful battery, but is also the most flexible and scalable home energy system on the market."   Furthermore, Generac boasts that "PWRcell offers 30% more power output than our competitors[ ], and it offers more storage capacity."[9] The System takes electricity produced by solar panels (not part of the PWRcell system but must be integrated into the System) and gives consumers the option of managing how that electricity is used, either for powering their homes, for storage in a generator, for storage in back-up batteries, or for net-metering (selling electricity back to the utility company that traditionally powered the consumer's home). A consumer can program how the electricity is used and track electricity production from within a Generac phone application.

7.     Generac advertises that consumers can "[s]ave money with PWRcell" and that use of the System will provide $66,217.00 in estimated savings over 25 years.[10] It also advertises that the System offers "[w]hole home power outage protection."[11]

8.     Consumers do not, however, receive the expected benefits of the System they purchased. Worse, the Systems are dangerous to consumers and their homes.

9.     Generac's PWRcell system includes components called SnapRS (Rapid Shutdown) units. SnapRS devices ("Snaps" or "SnapRS") are safety devices designed to rapidly shut down power to individual solar panels as required by the National Electric Code ("NEC") and reduce

---

[8] *PWRCELL*, Generac, https://www.generac.com/all-products/clean-energy/pwrcell (last visited August 29, 2023 ).
[9] *PWRCELL Solar + Battery Storage System*, Generac, https://www.generac.com/GeneracCorporate/media/Library/content/Clean%20Energy/PWRcell/ PWRcell_Consumer_Brochure-Digital-9-15-22.pdf (last visited August 29, 2023).
[10] *Id.*
[11] *Id.*

photovoltaic ("PV") output voltage to safe levels (less than 80 volts). These critical "shutoff" units are installed between each solar panel and are designed to protect against electrical surges, such as those caused by lightning strikes. If working properly, the SnapRS devices prevent electric shock, electrocution, physical harm, equipment damage, and damage to property.

10. The SnapRS devices do not, however, work properly, and Generac's SnapRS units are defective and dangerous to consumers and their homes. The shutoff devices malfunction by becoming overactive, repeatedly turning off and on, causing them to overheat, bubble, burn and explode, resulting in charring and home fires (the "Defect").

11. In addition, the Defect results in a loss of energy production for consumers' home energy systems by shutting down entire panels for prolonged periods of time or complete shutdowns of their entire energy system. Malfunctions are detected through Generac's inverters and coded as "PVRSS Lockout" system errors which send the system into "lockout mode," preventing the solar energy system from producing solar energy until the lockout is cleared. Upon information and belief, once the Defect manifests, it can cause downstream failure with other System components as well, such as the PV Links, Inverters, and back-up batteries.

12. Generac failed to properly instruct its authorized installers, including authorized installers now performing warranty service for putative Class Members, on how to install the Snaps and whether the Snaps should even be installed at all on Plaintiffs' and putative Class Members' Systems, which has resulted and will continue to result in the failure of the Snaps.

13. Generac has undertaken a deliberate and willful pattern of conduct (including taking active measures) aimed at concealing the Defect from its consumers, including Plaintiffs and putative Class Members.

2844925.1

14. At all relevant times, Generac knew or should have known about the Defect but nevertheless marketed, advertised, and sold the Systems without disclosing the Defect or warning consumers that the Snaps overheat, melt, explode, or otherwise malfunction and are dangerous to consumers and their homes or pose a serious safety risk to the public.

15. Plaintiffs and putative Class Members each relied upon Generac's representations because they purchased the Systems.

16. Generac failed to disclose the known Defect and/or provide consumers with a non-defective replacement. In addition, it fails to provide non-defective replacement components capable of remedying the problem and/or improperly denies consumers' warranty claims. Generac's purported solution, its newest version of the Snaps (the 802s), fails just as earlier models did or otherwise is inadequate warranty service because the replacement 802 Snaps fail to remedy Systems which have failed but manifested the Defect.

17. Despite Generac representing that replacement Snaps are available to consumers, Generac fails to provide adequate replacements, leaving Plaintiffs and Class Members with Systems that do not function as intended.

18. As a direct and proximate result of Generac's concealment of the Defect, its failure to warn customers about the Defect before their purchase, and its failure to recall the Systems or remedy the Defect, Plaintiffs and putative Class Members purchased the defective Systems, when they otherwise would not have made such purchases on the same terms or at all, would not have paid as much for the defective Systems, or would have otherwise altered their purchase and/or usage behavior to account for the Defect.

19.     Plaintiffs and putative Class Members' Systems failed or are likely to fail as a result of the Defect when they attempted to use the Systems as intended, resulting in damaged or unusable Systems and lost power generation capacity.

20.     Plaintiffs and putative Class Members' Systems contain the uniform Defect at the point-of-sale and Generac's Systems cannot be used for their intended purpose of safely and reliably managing and storing electricity.

21.     Generac's conduct violates well-established tort and consumer protection laws. Plaintiffs bring this suit on behalf of themselves and similarly situated consumers, seeking damages and appropriate equitable relief, including an order enjoining Generac from selling its Solar Products without disclosing their defect to consumers.

## THE PARTIES

22.     Plaintiff Robert Ammon is, and at all relevant times was, a resident and citizen of Canton, Ohio. He purchased a Generac PWRcell system in or around March of 2021 based upon Generac's and/or its authorized retailers' representations in marketing and advertising materials, pamphlets, brochures, and/or user manuals about the quality and functionality of its systems, and the absence of any information regarding the Defect. Following installation, Plaintiff Ammon began experiencing problems and errors with the system, resulting in the system ceasing the production of energy in whole or in part. Had he been aware of the defective nature of the system, Plaintiff Ammon would not have purchased the system on the same terms if at all, and/or would have otherwise altered his purchase behavior.

23.     Plaintiff Marcia Baltimore is, and at all relevant times was, a resident and citizen of Apex, North Carolina. She purchased a Generac PWRcell system in or around November of 2020 based upon Generac's and/or its authorized retailers' representations in marketing and advertising materials, pamphlets, brochures, and/or user manuals about the quality and

functionality of its systems, and the absence of any information regarding the Defect. Following installation, Plaintiff Baltimore began experiencing problems and errors with the system, resulting in the system ceasing the production of energy in whole or in part. Had she been aware of the defective nature of the system, Plaintiff Baltimore would not have purchased the system on the same terms if at all, and/or would have otherwise altered her purchase behavior.

24. Plaintiff Nicole Kibert Basler is, and at all relevant times was, a resident and citizen of Atlanta, Georgia. She purchased a Generac PWRcell system in or around March of 2021 based upon Generac's and/or its authorized retailers' representations in marketing and advertising materials, pamphlets, brochures, and/or user manuals about the quality and functionality of its systems, and the absence of any information regarding the Defect. Following installation, Plaintiff Kibert Basler began experiencing problems and errors with the system, resulting in the system ceasing the production of energy in whole or in part. Had she been aware of the defective nature of the system, Plaintiff Kibert Basler would not have purchased the system on the same terms if at all, and/or would have otherwise altered her purchase behavior.

25. Plaintiff John Bettorf is, and at all relevant times was, a resident and citizen of Troy, Illinois. He purchased a Generac PWRcell system in or around August of 2020 based upon Generac's and/or its authorized retailers' representations in marketing and advertising materials, pamphlets, brochures, and/or user manuals about the quality and functionality of its systems, and the absence of any information regarding the Defect. Following installation, Plaintiff Bettorf began experiencing problems and errors with the system, resulting in the system ceasing the production of energy in whole or in part. Had he been aware of the defective nature of the system, Plaintiff Bettorf would not have purchased the system on the same terms if at all, and/or would have otherwise altered his purchase behavior.

2844925.1

26.     Plaintiff Paul Cartmell is, and at all relevant times was, a resident and citizen of Kalkaska, Michigan. He purchased a Generac PWRcell system in or around February of 2021 based upon Generac's and/or its authorized retailers' representations in marketing and advertising materials, pamphlets, brochures, and/or user manuals about the quality and functionality of its systems, and the absence of any information regarding the Defect. Following installation, Plaintiff Cartmell began experiencing problems and errors with the system, resulting in the system ceasing the production of energy in whole or in part. Had he been aware of the defective nature of the system, Plaintiff Cartmell would not have purchased the system on the same terms if at all, and/or would have otherwise altered his purchase behavior.

27.     Plaintiff Steve Cothren is, and at all relevant times was, a resident and citizen of Pleasant Garden, North Carolina. He purchased a Generac PWRcell system in or around August of 2021 based upon Generac's and/or its authorized retailers' representations in marketing and advertising materials, pamphlets, brochures, and/or user manuals about the quality and functionality of its systems, and the absence of any information regarding the Defect. Following installation, Plaintiff Cothren began experiencing problems and errors with the system, resulting in the system ceasing the production of energy in whole or in part. Had he been aware of the defective nature of the system, Plaintiff Cothren would not have purchased the system on the same terms if at all, and/or would have otherwise altered his purchase behavior.

28.     Plaintiff Geoff Edwards is, and at all relevant times was, a resident and citizen of Hendersonville, Tennessee. He purchased a Generac PWRcell system in or around May of 2020 based upon Generac's and/or its authorized retailers' representations in marketing and advertising materials, pamphlets, brochures, and/or user manuals about the quality and functionality of its systems, and the absence of any information regarding the Defect. Following installation, Plaintiff

2844925.1

Edwards began experiencing problems and errors with the system, resulting in the system ceasing the production of energy in whole or in part. Had he been aware of the defective nature of the system, Plaintiff Edwards would not have purchased the system on the same terms if at all, and/or would have otherwise altered his purchase behavior.

29.     Plaintiff Miles Fawcett is, and at all relevant times was, a resident and citizen of South Park, Pennsylvania. He purchased a Generac PWRcell system in or around November of 2020 based upon Generac's and/or its authorized retailers' representations in marketing and advertising materials, pamphlets, brochures, and/or user manuals about the quality and functionality of its systems, and the absence of any information regarding the Defect. Following installation, Plaintiff Fawcett began experiencing problems and errors with the system, resulting in the system ceasing the production of energy in whole or in part. Had he been aware of the defective nature of the system, Plaintiff Fawcett would not have purchased the system on the same terms if at all, and/or would have otherwise altered his purchase behavior.

30.     Plaintiff Joel Galarza is, and at all relevant times was, a resident and citizen of Haines City, Florida. He purchased a Generac PWRcell system in or around October of 2021 based upon Generac's and/or its authorized retailers' representations in marketing and advertising materials, pamphlets, brochures, and/or user manuals about the quality and functionality of its systems, and the absence of any information regarding the Defect. Following installation, Plaintiff began experiencing problems and errors with the system, resulting in the system ceasing the production of energy in whole or in part. Had he been aware of the defective nature of the system, Plaintiff would not have purchased the system on the same terms if at all, and/or would have otherwise altered his purchase behavior.

31.     Plaintiff Melissa Gibson is, and at all relevant times was, a resident and citizen of Chesapeake, Virginia. She purchased a Generac PWRcell system in or around August 2020 based upon Generac's and/or its authorized retailers' representations in marketing and advertising materials, pamphlets, brochures, and/or user manuals about the quality and functionality of its systems, and the absence of any information regarding the Defect. Following installation, Plaintiff Gibson began experiencing problems and errors with the system, resulting in the system ceasing the production of energy in whole or in part. Had she been aware of the defective nature of the system, Plaintiff Gibson would not have purchased the system on the same terms if at all, and/or would have otherwise altered her purchase behavior.

32.     Plaintiff Daniel Haak is, and at all relevant times was, a resident and citizen of Lake Wales, Florida. He purchased a Generac PWRcell system in or around June of 2020 based upon Generac's and/or its authorized retailers' representations in marketing and advertising materials, pamphlets, brochures, and/or user manuals about the quality and functionality of its systems, and the absence of any information regarding the Defect. Following installation, Plaintiff began experiencing problems and errors with the system, resulting in the system ceasing the production of energy in whole or in part. Had he been aware of the defective nature of the system, Plaintiff would not have purchased the system on the same terms if at all, and/or would have otherwise altered his purchase behavior.

33.     Plaintiff Christopher Helmers is, and at all relevant times was, a resident and citizen of Astoria, Oregon. He purchased a Generac PWRcell system in or around April of 2021 based upon Generac's and/or its authorized retailers' representations in marketing and advertising materials, pamphlets, brochures, and/or user manuals about the quality and functionality of its systems, and the absence of any information regarding the Defect. Following installation, Plaintiff

2844925.1

began experiencing problems and errors with the system, resulting in the system ceasing the production of energy in whole or in part. Had he been aware of the defective nature of the system, Plaintiff would not have purchased the system on the same terms if at all, and/or would have otherwise altered his purchase behavior.

34.    Plaintiff Kevin Hemphill is, and at all relevant times was, a resident and citizen of New Castle, Pennsylvania. He purchased a Generac PWRcell system in or around October of 2021 based upon Generac's and/or its authorized retailers' representations in marketing and advertising materials, pamphlets, brochures, and/or user manuals about the quality and functionality of its systems, and the absence of any information regarding the Defect. Following installation, Plaintiff Hemphill began experiencing problems and errors with the system, resulting in the system ceasing the production of energy in whole or in part. Had he been aware of the defective nature of the system, Plaintiff Hemphill would not have purchased the system on the same terms if at all, and/or would have otherwise altered his purchase behavior.

35.    Plaintiff Albert Kates is, and at all relevant times was, a resident and citizen of Columbia, South Carolina. He purchased a Generac PWRcell system in or around May of 2021 based upon Generac's representations in marketing and advertising materials, pamphlets, brochures, and/or user manuals about the quality and functionality of its systems, and the absence of any information regarding the Defect. Following installation, Plaintiff began experiencing problems and errors with the system, resulting in the system ceasing the production of energy in whole or in part. Had he been aware of the defective nature of the system, Plaintiff would not have purchased the system on the same terms if at all, and/or would have otherwise altered his purchase behavior.

36.     Plaintiff Craig Lauder is, and at all relevant times was, a resident and citizen of Kouts, Indiana. He purchased a Generac PWRcell system in or around November of 2020 based upon Generac's and/or its authorized retailers' representations in marketing and advertising materials, pamphlets, brochures, and/or user manuals about the quality and functionality of its systems, and the absence of any information regarding the Defect. Following installation, Plaintiff began experiencing problems and errors with the system, resulting in the system ceasing the production of energy in whole or in part. Had he been aware of the defective nature of the system, Plaintiff would not have purchased the system on the same terms if at all, and/or would have otherwise altered his purchase behavior.

37.     Plaintiff Kathryn Locatell is, and at all relevant times was, a resident and citizen of Placerville, California. She purchased a Generac PWRcell system in or around July of 2021 based upon Generac's and/or its authorized retailers' representations in marketing and advertising materials, pamphlets, brochures, and/or user manuals about the quality and functionality of its systems, and the absence of any information regarding the Defect. Following installation, Plaintiff began experiencing problems and errors with the system, resulting in the system ceasing the production of energy in whole or in part. Had she been aware of the defective nature of the system, Plaintiff would not have purchased the system on the same terms if at all, and/or would have otherwise altered her purchase behavior.

38.     Plaintiff Jodi Matas is, and at all relevant times was, a resident and citizen of Theater Bluff, Virginia. She purchased a Generac PWRcell system in or around June of 2020 based upon Generac's and/or its authorized retailers' representations in marketing and advertising materials, pamphlets, brochures, and/or user manuals about the quality and functionality of its systems, and the absence of any information regarding the Defect. Following installation, Plaintiff

2844925.1

Matas began experiencing problems and errors with the system, resulting in the system ceasing the production of energy in whole or in part. Had she been aware of the defective nature of the system, Plaintiff Matas would not have purchased the system on the same terms if at all, and/or would have otherwise altered her purchase behavior.

39.     Plaintiff Dustin Moon is, and at all relevant times was, a resident and citizen of Soquel, California. He purchased a Generac PWRcell system in or around July of 2020 based upon Generac's and/or its authorized retailers' representations in marketing and advertising materials, pamphlets, brochures, and/or user manuals about the quality and functionality of its systems, and the absence of any information regarding the Defect. Following installation, Plaintiff Moon began experiencing problems and errors with the system, resulting in the system ceasing the production of energy in whole or in part. Had he been aware of the defective nature of the system, Plaintiff Moon would not have purchased the system on the same terms if at all, and/or would have otherwise altered his purchase behavior.

40.     Plaintiff Lori Morse is, and at all relevant times was, a resident and citizen of Stuart, Virginia. She purchased a Generac PWRcell system in or around February of 2021 based upon Generac's and/or its authorized retailers' representations in marketing and advertising materials, pamphlets, brochures, and/or user manuals about the quality and functionality of its systems, and the absence of any information regarding the Defect. Following installation, Plaintiff Morse began experiencing problems and errors with the system, resulting in the system ceasing the production of energy in whole or in part. Had she been aware of the defective nature of the system, Plaintiff Morse would not have purchased the system on the same terms if at all, and/or would have otherwise altered her purchase behavior.

2844925.1

41.     Plaintiff Adam Plichta is, and at all relevant times was, a resident and citizen of Farwell, Michigan. He purchased a Generac PWRcell system in or around April of 2020 based upon Generac's and/or its authorized retailers' representations in marketing and advertising materials, pamphlets, brochures, and/or user manuals about the quality and functionality of its systems, and the absence of any information regarding the Defect. Following installation, Plaintiff Plichta began experiencing problems and errors with the system, resulting in the system ceasing the production of energy in whole or in part. Had he been aware of the defective nature of the system, Plaintiff Plichta would not have purchased the system on the same terms if at all, and/or would have otherwise altered his purchase behavior.

42.     Plaintiff Jason Poston is, and at all relevant times was, a resident and citizen of Freeburg, Illinois. He purchased a Generac PWRcell system in or around October of 2020 based upon Generac's and/or its authorized retailers' representations in marketing and advertising materials, pamphlets, brochures, and/or user manuals about the quality and functionality of its systems, and the absence of any information regarding the Defect. Following installation, Plaintiff Poston began experiencing problems and errors with the system, resulting in the system ceasing the production of energy in whole or in part. Had he been aware of the defective nature of the system, Plaintiff Poston would not have purchased the system on the same terms if at all, and/or would have otherwise altered his purchase behavior.

43.     Plaintiff Anita Richardson is, and at all relevant times was, a resident and citizen of Saginaw, Michigan. She purchased a Generac PWRcell system in or around October 2020 based upon Generac's representations in marketing and advertising materials, pamphlets, brochures, and/or user manuals about the quality and functionality of its systems, and the absence of any information regarding the Defect. Following installation, Plaintiff began experiencing problems

and errors with the system, resulting in the system ceasing the production of energy in whole or in part. Had she been aware of the defective nature of the system, Plaintiff would not have purchased the system on the same terms if at all, and/or would have otherwise altered her purchase behavior.

44. Plaintiff Michael Shirk is, and at all relevant times was, a resident and citizen of Pottsville, Pennsylvania. He purchased a Generac PWRcell system in or around October of 2021 based upon Generac's and/or its authorized retailers' representations in marketing and advertising materials, pamphlets, brochures, and/or user manuals about the quality and functionality of its systems, and the absence of any information regarding the Defect. Following installation, Plaintiff Shirk began experiencing problems and errors with the system, resulting in the system ceasing the production of energy in whole or in part. Had he been aware of the defective nature of the system, Plaintiff Shirk would not have purchased the system on the same terms if at all, and/or would have otherwise altered his purchase behavior.

45. Plaintiff Allan Slater is, and at all relevant times was, a resident and citizen of Protem, Missouri. He purchased a Generac PWRcell system in or around March of 2022 based upon Generac's and/or its authorized retailers' representations in marketing and advertising materials, pamphlets, brochures, and/or user manuals about the quality and functionality of its systems, and the absence of any information regarding the Defect. Following installation, Plaintiff Slater began experiencing problems and errors with the system, resulting in the system ceasing the production of energy in whole or in part. Had he been aware of the defective nature of the system, Plaintiff Slater would not have purchased the system on the same terms if at all, and/or would have otherwise altered his purchase behavior.

46. Plaintiff Carolyn Slusher is, and at all relevant times was, a resident and citizen of Britton, Michigan. She purchased a Generac PWRcell system in or around September of 2021

based upon Generac's and/or its authorized retailers' representations in marketing and advertising materials, pamphlets, brochures, and/or user manuals about the quality and functionality of its systems, and the absence of any information regarding the Defect. Following installation, Plaintiff Slusher began experiencing problems and errors with the system, resulting in the system ceasing the production of energy in whole or in part. Had she been aware of the defective nature of the system, Plaintiff Slusher would not have purchased the system on the same terms if at all, and/or would have otherwise altered her purchase behavior.

47.     Plaintiff Rabia Stevenson is, and at all relevant times was, a resident and citizen of Pittsford, New York. She purchased a Generac PWRcell system in or around October of 2020 based upon Generac's and/or its authorized retailers' representations in marketing and advertising materials, pamphlets, brochures, and/or user manuals about the quality and functionality of its systems, and the absence of any information regarding the Defect. Following installation, Plaintiff Stevenson began experiencing problems and errors with the system, resulting in the system ceasing the production of energy in whole or in part. Had she been aware of the defective nature of the system, Plaintiff Stevenson would not have purchased the system on the same terms if at all, and/or would have otherwise altered her purchase behavior.

48.     Plaintiff Beverly Taylor is, and at all relevant times was, a resident and citizen of Clarksville, Tennessee. She purchased a Generac PWRcell system in or around March of 2022 based upon Generac's and/or its authorized retailers' representations in marketing and advertising materials, pamphlets, brochures, and/or user manuals about the quality and functionality of its systems, and the absence of any information regarding the Defect. Following installation, Plaintiff Taylor began experiencing problems and errors with the system, resulting in the system ceasing the production of energy in whole or in part. Had she been aware of the defective nature of the

system, Plaintiff Taylor would not have purchased the system on the same terms if at all, and/or would have otherwise altered her purchase behavior.

49.     Plaintiff Margaret Venema is, and at all relevant times was, a resident and citizen of Spring, Texas. She purchased a Generac PWRcell system in or around October of 2021 based upon Generac's and/or its authorized retailers' representations in marketing and advertising materials, pamphlets, brochures, and/or user manuals about the quality and functionality of its systems, and the absence of any information regarding the Defect. Following installation, Plaintiff Venema began experiencing problems and errors with the system, resulting in the system ceasing the production of energy in whole or in part. Had she been aware of the defective nature of the system, Plaintiff Venema would not have purchased the system on the same terms if at all, and/or would have otherwise altered her purchase behavior.

50.     Plaintiff Kerri Vincent is, and at all relevant times was, a resident and citizen of Collins, Missouri. She purchased a Generac PWRcell system in or around June of 2022 based upon Generac's and/or its authorized retailers' representations in marketing and advertising materials, pamphlets, brochures, and/or user manuals about the quality and functionality of its systems, and the absence of any information regarding the Defect. Following installation, Plaintiff Vincent began experiencing problems and errors with the system, resulting in the system ceasing the production of energy in whole or in part. Had she been aware of the defective nature of the system, Plaintiff Vincent would not have purchased the system on the same terms if at all, and/or would have otherwise altered her purchase behavior.

51.     Plaintiff James Ward is, and at all relevant times was, a resident and citizen of Camarillo, California. He purchased a Generac PWRcell system in or around May 2021 based upon Generac's representations in marketing and advertising materials, pamphlets, brochures,

and/or user manuals about the quality and functionality of its systems, and the absence of any information regarding the Defect. Following installation, Plaintiff began experiencing problems and errors with the system, resulting in the system ceasing the production of energy in whole or in part. Had he been aware of the defective nature of the system, Plaintiff would not have purchased the system on the same terms if at all, and/or would have otherwise altered his purchase behavior.

52. Plaintiff Mark Wasserman is, and at all relevant times was, a resident and citizen of Pleasant Hill, Ohio. He purchased a Generac PWRcell system in or around August of 2021 based upon Generac's and/or its authorized retailers' representations in marketing and advertising materials, pamphlets, brochures, and/or user manuals about the quality and functionality of its systems, and the absence of any information regarding the Defect. Following installation, Plaintiff began experiencing problems and errors with the system, resulting in the system ceasing the production of energy in whole or in part. Had he been aware of the defective nature of the system, Plaintiff Wasserman would not have purchased the system on the same terms if at all, and/or would have otherwise altered his purchase behavior.

53. Defendant Generac Power Systems, Inc. distributes, markets, and directs the marketing of its products, including the aforementioned Systems, throughout the United States and, upon information and belief, is a publicly traded Wisconsin corporation with its principal place of business located at S45 W29290 Highway 59, Waukesha, Wisconsin 53189.

54. Defendant Generac Holdings, Inc. is the parent company of Generac Power Systems, Inc. Generac Holdings, Inc.'s principal executive offices are located at S45 W29290 Highway 59, Waukesha, Wisconsin 53189. Defendants Generac Power Systems, Inc. and Generac Holdings, Inc. are collectively referred to herein as "Generac."

2844925.1

## JURISDICTION AND VENUE

55. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (a) there are 100 or more putative Class Members; (b) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; and (c) there is minimal diversity because Plaintiffs and Defendants are citizens of different states. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 and claim pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §. 2301, *et seq.*

56. This Court has personal jurisdiction over Defendants because Defendants maintain their headquarters and have systematic business activities in this District, and have substantial aggregate contacts with this District, including engaging in conduct that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and purposely availed itself of the laws of the United States and the State of Wisconsin.

57. In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this District, Defendants transacts business in this District, and Defendants have intentionally availed themselves of the laws and markets within this District.

## COMMON FACTUAL ALLEGATIONS

58. Generac is a publicly traded manufacturer of clean energy management systems with customers across the globe. Approximately 85% of its net sales (LTM) are domestic, and

67% of those sales consist of residential energy products.[12] Generac has over 10,000 employees worldwide and an adjusted EBITDA (LTM) of $897 million.[13]

59.      Generac was founded in 1959 as an affordable portable generator company. In 1980, it expanded into industrial power generation and introduced its first residential standby generator in 1989. Generac expanded its industrial products and global distribution system in the 1990s and in the 2000s continued to expand its residential and commercial automatic standby generator product lines.[14]

60.      Generac describes itself as a "leading global designer and manufacturer of a wide range of energy technology solutions," providing "power generation equipment, energy storage systems and other power products serving residential, light commercial and industrial markets."[15]

61.      Generac considers customer service to be a "core element of [its] enterprise strategy."[16] According to Generac, its engineers maintain "rigorous design standards that account for product safety at every stage of product development, and products go through multiple rounds of design review to ensure that safety is paramount."[17] Additionally, Generac represents that "Excellence is one of our Corporate Values, and our product quality team exemplifies this value

---

[12] *Investor Presentation – August 2022*, Generac, https://investors.generac.com/static-files/a9f36c1c-9836-436b-ae20-84bdb21b3b62 (last visited August 29, 2023).
[13] *Id.*
[14] Generac 2021 Annual Report, at pp. 3-4, *available at* www.generac.com, *Investor Relations*, *Annual & ESG Reports*, https://investors.generac.com/static-files/e6ea7b98-227f-4c08-b205-5c895533173e, last visited on August 29, 2023.
[15] Generac Feb. 22, 2022 Form 10-K, at p. 43, *available at* www.generac.com, *Investor Relations*, *SEC Filings*, https://investors.generac.com/static-files/16af6044-ca8b-4828-80f9-af48a4be7b55, last visited on August 29, 2023.
[16] Generac, *Environmental, Social, and Governance Report 2021*, https://investors.generac.com/static-files/edaf815c-9f4f-4453-8b1e-0f61f9175255 (last visited August 29, 2023).
[17] *Id.*

through vigorous involvement in both our new product development and production processes."[18] Generac "maximize[s] the quality and value of [its] products for [its] customers" by "regularly perform[ing] design reviews and testing."[19]

62.     According to the Solar Energy Industries Association (SEIA), the value of the solar power market in the United States alone is $33 billion.[20] Growth of electricity production from solar energy has been exponential, more than 80 times its share a decade ago.[21] At current rates, 13% of homes in the United States will have solar PV systems by 2030.[22]

63.     Generac seeks to capitalize on the burgeoning solar energy market stating that its "purpose" is to "lead the evolution to more resilient, efficient, and sustainable energy solutions" and sees solar as one of several "strategic growth themes" for the business.[23] As the United States energy production systems shift, Generac seeks to unlock $72 billion by 2025 with residential clean energy as a "key driver" of its strategic evolution.[24]

64.     Starting in 2019, Generac made "significant investments" in "energy technology solutions" including through the rapid acquisition of several companies involved in the manufacture of residential solar panel systems.[25]

> [B]eginning with the March 2019 acquisition of Neurio Technology Inc., a leading energy data company focused on metering technology and sophisticated analytics to optimize energy use

---

[18] *Id.*

[19] *Id.*

[20] *Solar Data Cheat Sheet*, Solar Energy Industries Association, https://www.seia.org/researchresources/solar-data-cheat-sheet

[21] *Id.*

[22] *Id.*

[23] *Investor Presentation – August 2022*, Generac, https://investors.generac.com/staticfiles/a9f36c1c-9836-436b-ae20-84bdb21b3b62 (last visited August 29, 2023).

[24] *Id.*

[25] Generac 2021 Annual Report, at p. 4, *available at* www.generac.com, *Investor Relations, Annual & ESG Reports*, https://investors.generac.com/static-files/e6ea7b98-227f-4c08-b205-5c895533173e (last visited August 29, 2023).

within a home or business. This was followed by the April 2019 acquisition of Pika Energy Inc., a designer and manufacturer of battery storage technologies that capture and store solar or other power sources for homeowners and businesses. In October 2020, the Company acquired Enbala Power Networks Inc., one of the leading providers of distributed energy optimization and control software that helps support the operational stability of the world's power grids. In July 2021, Generac added to its residential clean energy portfolio with the acquisition of Chilicon Power LLC, a designer and provider of grid-interactive microinverter and monitoring solutions for the solar market. With these acquisitions, Generac has established itself as a credible leader in the rapidly growing residential clean energy market, focused on solar, battery storage and grid services applications.[26]

65.     Prior to these acquisitions, Generac was not involved in the residential solar energy business.

66.     Generac includes "Solar, Storage & Monitoring Markets Developing Quickly" among its "Strategic Growth Themes" and described its "Integrated Energy Ecosystem" as the "Industry's Broadest Residential Clean Energy Product Offering."[27]

67.     Generac's main clean energy product consists of its PWRcell system, which it designed and manufactures.[28] Generac describes the System as "a fully integrated solar + battery storage system," as depicted below:[29]

---

[26] *Id.*; *see also id.* at p. 21.
[27] *Id.* at pp. 6 and 14.
[28] Generac PWRcell Brochure, *available at* www.generac.com, *Homeowners, Products – Clean Energy, PWRcell, PWRcell Brochure*, https://www.generac.com/generaccorporate/media/library/content/clean%20energy/pwrcell_consumerbrochure_202212_digital.pdf?ext=.pdf ("PWRcell Brochure"), last visited Dec. 22, 2022.
[29] *Id.*



68.     Generac advertises its PWRcell system as a product that will "[s]ave money," allow customers to "prepare for power outages" and is "environmentally friendly."[30] The PWRcell system was designed and is manufactured by Generac.

69.     Generac claims that its PWRcell system "has all the power and capacity you need, enough to save money on energy bills and keep the whole home powered when the grid goes down . . . ." It also represents that its PWRcell system can "save you money on your monthly electric bill [sic] AND protect you and your family," and that the system's cohesive load management provides consumers with "further protection."[31]

70.     Generac further advertises that its customers should "[n]ever be surprised by utility power outages or high electricity bills again when you have the Generac PWRcell, a fully

---

[30] PWRcell Brochure, at pp. 1 and 3.
[31] Generac.com, Clean Energy, PWRcell, at https://www.generac.com/all-products/clean-energy/pwrcell, last visited on August 29, 2023.

integrated solar + battery storage system. PWRcell provides backup power using stored energy from the sun, which helps you save money."[32]

71.     According to Generac, the PWRcell "offers 30% more power output than [its] competitors," estimated energy savings of $159 per month, and estimated savings of $68,217 over twenty-five years.[33] Generac customers can monitor the performance and energy output for their System through Generac's PWRview energy monitoring app. Among other functions, PWRview allows Generac customers to "[t]rack the status of [their] battery system to ensure energy is available during peak demand times and utility power outages" and "[u]understand how PWRcell helps [them] meet [their]energy needs . . . ."[34]

72.     The PWRcell system is customizable and described by Generac as "easy" to install. Generac does not manufacture or provide the residential solar panels. Instead, its System "pairs with solar panels" made by other manufacturers.[35]

73.     Generac certifies and provides specific trainings, resources, and support to PWRcell sellers and installers, and has a distinct "Contractor Acquisition Team" to "onboard" its sellers and installers.[36]

74.     The PWRcell system manages, processes, stores, monitors, and provides electricity generated through the solar panels. Generac markets its PWRcell system as "revolutionary battery storage technology [that] captures and stores energy from the sun using solar panels[,]" and that the "energy stored can be discharged to power your home during peak demand times when the

---

[32] PWRcell Brochure, at p. 2.
[33] *Id.* at p. 5.
[34] *Id.* at p. 6.
[35] *Id.* at p. 4.
[36] Generac.com, *Homeowners, Clean Energy, Become an Installer, available at* https://www.generac.com/resources-and-tools/ce-installer-resources/become-an-installer (last visited on Dec. 27, 2022.

cost of utility power is higher, which can help you save thousands in electric utility costs."  In addition, Generac describes its PWRcell as being a critical safety system that can be used by consumers in the event of natural disasters or power outages. Specifically, its advertisements proclaim that the Systems, "provide whole home backup power during utility power outages, so you stay comfortable, safe and secure in your home."[37] For many consumers, especially vulnerable homeowners who need electricity for medical devices and other life saving measures, the ability of the Solar Products to reliably provide electricity during power outages, is a critical selling point for these Systems.

75.     Notably, a consumer cannot purchase solar panels from Generac. The purpose of the PWRcell is to manage electricity produced by solar panel modules (PV modules) for consumption within a consumer's home. In order to integrate existing solar panels into the PWRcell System and a consumer's overall electricity intake, Generac utilizes PV Link and SnapRS connector components.[38] The PV Link "allows you to connect 2 to 9 solar PV modules, enabling you to build a flexible, easy-to-install solar array."[39] Each array is connected to a PV Link optimizer, which connects and optimizes performance and energy output for the panels to help overcome, for example, site shading and roof line interference that can inhibit power production. Electricity is routed through the SnapRS units to the PV Link and into the Generac home battery storage system. Each PV Link and solar panel array connected by SnapRS units are referred to as a "power zone."

---

[37] Generac PWRcell Homeowner Resources, available at www.generac.com, Homeowners, Support – PWRcell and PWRview, Introducing PWRcell, *available at* https://www.generac.com/service-support/pwrcell-homeowner-resources/introducing-pwrcell (last visited on Dec. 22, 2022).
[38] PWRcell Brochure, at p. 9.
[39] *Id.*

76.     The SnapRS (Rapid Shutdown Device) connector "is an in-line disconnect device that helps to satisfy module-level rapid shutdown requirements"[40] by "isolat[ing] each PV module in the array"[41] as shown below:[42]



*Diagram is applicable for most 60 cell PV modules. Modules with higher cell count may require a different arrangement. Contact Generac for more details.*

77.     The Snap RS and PV Link components for the System are pictured below:[43]



78.     SnapRS (Rapid Shutdown) devices are connected to the negative lead of each solar panel (PV module) in the solar array, "for simple module-level shutdown compliance. SnapRS devices isolate array voltage when a rapid shutdown is initiated at a PWRcell Inverter. When rapid

---

[40] *Id.*

[41] *SnapRS® Spec Sheet*, Generac, https://www.generac.com/service-support/product-supportlookup/product-support-details?productid=4194798d-a712-4fc2-abe4-08ed498f43de (last visited Sept. 26, 2022).

[42] *Id.*

[43] *Id.* at p. 9.

2844925.1

shutdown is initiated, SnapRS units isolate each PV module in the array, reducing array voltage to <80V in seconds."[44]

79.     Generac advertises that its Snaps meet National Electrical Code 2017 and 2020 requirements, specifically "rapid shutdown requirements,"[45] and are "[p]lug and play" and that "installation is quick and tool-free."[46] It also represents "SnapRS and PV Link Optimizers are listed to UL 1741."[47]

80.     UL 1741 is the Underwriters Laboratories Inc. Standard for Inverters, Converters, Controllers and Interconnection System Equipment for Use With Distributed Energy Resources, setting forth performance and safety requirements for such devices. Generac warrants that the Snaps are able to reduce output to 75 V in under ten seconds.[48]

| SnapRS™ (APKE00011) | |
| --- | --- |
| PV MODULE MAX VOC: | 75 V |
| EFFICIENCY: | 99.8%² |
| MAX INPUT CURRENT: | 13 A |
| MAX TOTAL QTY IN SUBSTRING: | 10 |
| SHUTDOWN TIME: | < 10 Seconds |
| ENCLOSURE RATING: | NEMA 6P |
| OPERATING TEMPERATURE - FAHRENHEIT (CELSIUS): | -40 to 158 °F (-40 to 70 °C) |
| CERTIFICATIONS: | UL1741 |
| PROTECTIONS: | PVRSE |
| WARRANTY: | 25 Years |

²When used with a 50V panel

---

[44] Generac SnapRS Spec Sheet, *available at* https://www.generac.com/service-support/product-support-lookup/product-support-details?productid=4194798d-a712-4fc2-abe4-08ed498f43de (last visited on Dec. 22, 2022).
[45] PWRcell Brochure, at p. 9.
[46] *PWRcell Full System Overview*, Generac, https://www.generac.com/for-homeowners/cleanenergy/clean-energy-ecosystem (last visited Sept. 26, 2022).
[47] PWRcell Brochure, at p. 9.
[48] *PWRcell Full System Overview*, Generac, https://www.generac.com/for-homeowners/cleanenergy/clean-energy-ecosystem (last visited Sept. 26, 2022).

81.     The Snaps allow for rapid shutdowns to protect against lightning strikes and other electrical surges, including when roof access is necessary or where electric shock or electrocution could result in serious injury, death and/or property damage.

82.     If Snaps are not functioning properly, electricity produced by single solar panel modules is unable to circulate around the solar panel array to the PV Link and, subsequently, into a consumer's home for any purpose. While Snaps isolate individual solar panel modules, the PV Link creates a circuit that flows from solar panel module to solar panel module through Snaps into the PWRcell Inverter, such that a damaged or destroyed Snap disrupts the flow of the entire circuit and may render an array (of up to eight solar panel modules) as well as other System components inoperable.

83.     Generac's written warranty for its SnapRS units is for 25 years and other System components are covered for 10 years. Generac further warrants that its PWRcell products will be free from defects and that it will cover parts, labor, and travel for its defective equipment:[49]

---

[49] *Generac Power Systems Limited Warranty for Generac PWRcell®*, Generac, https://prodgeneracsoa.azurefd.net/manualsweb/manuals/APKE00011/A0000416920 (last visited Sept. 26, 2022).

2844925.1

## Generac Power Systems Limited Warranty for Generac PWRcell®

For the period of warranty noted below and beginning upon the successful registration of the unit, Generac Power Systems, Inc. (Generac) warrants that its Generac PWRcell® products will be free from defects in material and workmanship for the items and period set forth below. Any equipment that the purchaser/owner claims to be defective should be reported to Generac customer service for evaluation and resolution. Generac will, at its discretion, repair or replace any part(s) which, upon evaluation, inspection, and testing by Generac, an Independent Authorized Service Dealer or certified installer, is found to be defective.

| Product | Model Number | Warranty Period | Coverage |
|---|---|---|---|
| Generac PWRcell Battery Cabinet | APKE00007<br>APKE00028 | 10 years | Parts, Labor, and Limited Travel |
| Generac PWRcell Battery Modules | A0000391219<br>G0080040<br>G0080001<br>G0080003<br>G0080005 | 10 years or 7.56MWh of energy throughput per module, whichever comes first (i.e. a six module system carries a warranty of 10 years or 45.36 MWh of total energy throughput). Capacity retention guarantee at the end of the warranty period: At least 70% of nameplate rating. | |
| Generac PWRcell Inverter | APKE00014<br>APKE00013<br>XVT076A03<br>XVT114G03 | 10 years | |
| PWRmanager™ | G0080090 | 10 years | |
| PV Link™ | APKE00010 | 25 years | |
| SnapRS™ | APKE00011<br>RS801a<br>RS802 | 25 years | |

84.    As alleged herein, Generac's Solar Products, including its SnapRS units, are not free from defects, including a defect where the SnapRS devices become overactive, overheat, bubble, burn, separate, melt, char, combust, and/or explode. Despite this, Plaintiffs and Class Members were denied coverage for repairs. Rather, Generac takes the position that costs for repairs should be borne entirely by its customers or installers and has declined, either entirely or for an unreasonable period of time, to remedy the Defect.

## **THE DEFECT**

85.    The SnapRS components connect each solar panel module on the roof of a home to form a singular solar panel array. Electricity flows through the Snaps into the PV Link, and then into battery storage. The Snaps should stay "on" or "off" unless activated with the intention of quickly shutting down or restarting the flow of electricity.

86.    Rather than remaining in an "on" or "off" condition, Generac's SnapRS units are defective in that they become overactive and turn on and off repeatedly. The overactivity in the

SnapRS units causes them to overheat, bubble, burn, separate, melt, char, combust, and/or explode. These thermal events can lead to fire and, upon information and belief, have caused fires and other potential hazards to Generac consumers' homes.

87. Additionally, upon overheating, customers can experience a "PVRSS Lockout" error in their Systems, which causes the Systems to shut down. When a PV Link or Inverter detects a malfunctioning or overheating Snap in a particular solar panel array, the entire array goes into "lockout mode" and ceases to generate any power until the lockout is cleared. Clearing the lockout generally requires a service technician to replace the faulty Snaps causing the "lockout mode."

88. Upon information and belief, Generac has acknowledged a near 50% failure rate in its Snaps.

89. Upon information and belief, and after Generac had received significant numbers of complaints from customers and installers about its System, Generac advised in or around August 2021 that it had a "fix" for the Snap overheating malfunction. It planned to release a firmware update and had the ability to remotely identify defective Snap units that were in danger of overheating and presented fire hazards to consumers. The firmware was intended to keep the SnapRS signal constant rather than turn on and off repeatedly.

90. Generac instituted the firmware updates in August 2021. However, the Snap overheating malfunction persisted. In addition, upon information and belief, Generac was aware that a significant number of customers had not even received the firmware update because their solar energy systems were not connected to the internet.

91. Furthermore, Generac's firmware update adversely impacted customer solar power energy Systems and energy production by triggering PVRSS Lockout system errors, shutting down the System or entire arrays of panels for prolonged periods of time.

92. Generac never disclosed to its customers that Snap malfunctions persisted despite its firmware update or that the firmware update could result in shutdowns or reduced power output for its customers' Systems.

93. In late 2021, Generac released its second model of Snaps, the 801A. This model was released as a redesign of the original 801 Snap model in an attempt to resolve the Defect. However, the Defect persisted, as did the "PVRSS Lockout" issue.

94. Upon information and belief, by spring of 2022, Generac represented that it had submitted a report to the Consumer Product Safety Commission ("CPSC") regarding its Snap devices, but Generac refused to issue a product recall.

95. In or around May and/or June 2022, Generac admitted to needing to replace the 801 and 801A Snap models. Specifically, Generac stated that there were issues that it needed "[t]o address" and that it needed to "help better optimize and enhance the performance of [its] PWRcell solar + storage systems over the long-term." Generac stopped short of admitting that the Snaps were defective, however, and failed to warn consumers about any of the issues with the Snaps.

96. At the same time, Generac announced the release of the 802 Snap model, which Generac described as being "designed and engineered to the highest safety and reliability standards." Generac highlighted that the 802 Snap model "ha[d] been tested in extreme heat and corrosive moisture conditions with exceptional results." However, upon information and belief, Generac did not make enough Snap 802 units available to replace existing 801 and 801A units, has not replaced all of the defective 801 and 801A Snaps that remain installed, and the Defect continues to manifest.

97. The Defect renders the Systems unfit for the ordinary purpose for which they are purchased and used, which is to safely and reliably manage, produce, and store electricity.

2844925.1

98.     As a result of the Defect, the Systems pose an unreasonable risk of harm to Plaintiffs, putative class members, consumers and their property and fail. The Snaps overheat, melt, explode, and otherwise malfunction, which can cause fire damage to consumers' homes as well as power surges, loss of electricity, and loss of power storage and monetary savings consumers reasonably expected when purchasing the Systems.

99.     Had Plaintiffs and putative Class Members known that the Systems were defective, unreliable, posed an unreasonable risk of harm to themselves and their property, and could and would cause damage, they would not have purchased the Systems at all, on the same terms, or for the same price.

## THE WARRANTY

100.    Generac expressly and impliedly warrants, via user manuals, advertisements, pamphlets, brochures, circulars, samples, and/or models, that the Systems are fit for the ordinary purpose for which they are sold.

101.    Generac expressly warrants in its Limited Warranty that the Snaps will be free from defects for 25 years.[50]

102.    Plaintiffs and the Class are covered by Generac's warranties. Although consumers purchase the Systems through Generac's authorized dealers, Generac's manifest intent that its warranties apply to Plaintiffs and putative Class Members as third-party beneficiaries is evident from the statements contained in its literature concerning the Systems. For example, the Limited Warranty states "Any equipment that the purchaser/owner claims to be defective should be reported to Generac customer service for evaluation and resolution." Additionally, the Limited

---

[50] *Generac Power Systems Limited Warranty for Generac PWRcell®*, Generac, https://prodgeneracsoa.azurefd.net/manualsweb/manuals/APKE00011/A0000416920 (last visited Sept. 26, 2022).

2844925.1

Warranty states the "Warranty is transferable between ownership of original installation site only." The Limited Warranty intends that whoever owns the System retains the rights under the warranty, which here includes Plaintiffs and putative Class Members. Likewise, on Generac's website, the information pertaining to the Systems falls under the dropdown menu category for "HOMEOWNERS" and not "BUSINESS & INDUSTRY," "GRID SERVICES," and "DEALERS & INSTALLERS." Generac plainly contemplates that the homeowner is the individual with rights under the Limited Warranty and as such, Plaintiffs and putative Class Members are third-party beneficiaries. Lastly, it was reasonably foreseeable that Plaintiffs and putative Class Members would be the intended beneficiaries of the Systems and Limited Warranty.

103. Plaintiffs and putative Class Members were informed of the Limited Warranty at the time of purchase and in going through with the purchase, relied on the Limited Warranty.

104. Generac's Limited Warranty fails of its essential purpose for the following reasons:

    a.    Generac fails to disclose at the time of sale its knowledge of the Defect to consumers;

    b.    Generac fails to disclose its knowledge of the Defect when contacted by customers about System failures;

    c.    Generac consistently fails to replace defective Snaps with purportedly non-defective counterparts despite representing that the 802 Snap model is available;

    d.    Generac has failed to produce a sufficient amount of Snaps to replace all defective Snaps; and

    e.    Generac has no non-defective Snap component available for consumers. The 802 Snap model is defective and causes the same or similar errors in consumers' Systems.

105. As described herein, Generac breached the Limited Warranty at the time it shipped the Systems (and at the point-of-sale to consumers) because the Snaps were defective when they came off of the assembly line. The Defect causes the Snaps to overheat, melt, explode, or otherwise

malfunction, making consumers unable to properly or safely use the Systems. Thus, at the time the Systems were shipped and sold to consumers, Generac was in violation of the express warranty.

106.    Further, because Generac does not have non-defective Snaps available to replace the defective Snaps or does not have the capacity to replace the defective Snaps, and because its replacement Snaps are not able to resolve the Defect, it is unable to fulfill its warranty obligations at the point of purchase, or anytime thereafter, and the Limited Warranty is therefore breached immediately upon purchase.

107.    In addition, the Limited Warranty is unconscionable as follows:

    a.    In its limitation that the Limited Warranty only begins after a consumer has registered;

    b.    In its limitations on transfer of the Limited Warranty only between ownership of the original installation site only;

    c.    In its limitation that the Systems remain connected to the Internet at all times;

    d.    In its failure and refusal to extend the time limitation at the time a replacement Snap is installed;

    e.    In its requirement for consumers to utilize Independent Authorized Service Dealers or certified installers when those authorized dealers and installers will refuse to service consumers' Systems;

    f.    In its disclaimer of warranties; and

    g.    In its limitation of remedies, including disclaimer of incidental and consequential damages.

108.    The Limited Warranty is also unconscionable given Generac's knowledge of the Defect, the existence of the Defect at the point-of-sale, Generac's failure to disclose the Defect at the time of sale and during warranty communications, and in the premature failure of the System.

109.    Any limitations on the Limited Warranty are also procedurally unconscionable. There was unequal bargaining power between Generac, on the one hand, and Plaintiffs and putative

2844925.1

Class Members, on the other. The Systems are a substantial investment on the part of consumers, who otherwise have no ability to negotiate the price or terms of the Limited Warranty.

110. Any limitations on the Limited Warranty are also substantively unconscionable. Generac knew the Systems were defective and would continue to fail due to overheating, yet Generac concealed, omitted, or failed to disclose this material fact to Plaintiffs and the Putative Class Members. The Systems pose a safety risk to consumers because the Defect, that the Snaps overheat, melt, explode, and otherwise malfunction, causes the solar panel array within which the Snaps operate to cease production of electricity and, instead, to catch fire.

111. Generac omitted, concealed, or failed to disclose the Defect to Plaintiffs and putative Class Members. When consumers complain about System failure, Generac actively conceals the existence of the Defect and prevents consumers from discovering it. Thus, Generac's enforcement of any limit on these warranties is harsh and shocks the conscience.

112. Generac has actively omitted, concealed, or failed to disclose the existence and nature of the Defect from Plaintiffs and putative Class Members, despite its knowledge of the existence and pervasiveness of the Defect, and certainly well before Plaintiffs and putative Class Members purchased the Systems and during warranty communications. Specifically, Generac has:

     a. Failed to disclose the Defect to consumers, at or after the time of purchase, including when consumers make warranty claims or otherwise complain to Generac about the Defect;

     b. Actively concealed the Defect from consumers, at or after the time of purchase, including when consumers make warranty claims, or otherwise complain to Generac about the Defect;

     c. Failed to disclose, and actively concealed the Defect from consumers, including that the Systems, specifically the Snaps, were not fit for their intended purpose;

     d. Failed to disclose and actively concealed the Defect from consumers when

2844925.1

it provided them with replacement Snaps that contained the same or similar Defect;

e.  Failed to disclose and actively concealed the Defect from consumers when it provided them with firmware or software updates it knew would fail to remedy the Defect;

f.  Failed to disclose and actively concealed the Defect from consumers when it provided them with replacement Snaps, without remedying the actual Defect, and when it knew the Systems could fail again; and

g.  Failed to disclose and actively concealed the Defect from consumers when it announced the availability of the 802 Snap model as a performance-enhancing Snap without disclosing the Defect, making the 802 Snaps generally available to consumers to install in their Systems, and not actually remedying the Defect with the 802 Snap model.

113.  As a direct, proximate, and foreseeable result of the Defect, Plaintiffs and putative Class Members suffered damages, including but not limited to: (a) the difference in value of the Systems as purchased and the Systems as received; (b) loss of use of the Systems; (c) cost to repair or replace the Systems, including labor and parts; (d) consequential damages; and (e) damage to property other than the Systems.

114.  Plaintiffs and putative Class Members were in privity with Generac because Generac makes direct representations to consumers, who are the ultimate purchasers, about the qualities and attributes of the Systems – including the aforementioned advertising on Generac's website about the supposed quality of its products. Consumers who install the Systems on their property must integrate pre-existing solar panel modules, connect internet to the Systems, and can operate their Systems through Generac's phone application. In turn, Generac monitors consumers' Systems through the application or through the internet connection to the System.

115.  Further, Generac issued warranties to Plaintiffs and putative Class Members as part of the sale of the Systems. For consumers with warranty claims, Generac represents that either it or one of its authorized service providers or certified installers will monitor Plaintiffs and putative

2844925.1

Class Members' Systems and perform any necessary repairs; otherwise, the Limited Warranty is null and void. Accordingly, the warranty was designed for and intended to benefit only the end consumers – here, Plaintiffs and putative Class Members.

116.     In any event, privity is not required here because Plaintiffs and putative Class Members were (and are) intended third-party beneficiaries of the Systems. The retailers and installers were not intended to be the ultimate consumers of the Systems and have no rights under the Limited Warranty provided to Plaintiffs and putative Class Members when they purchased the Systems.

## FACTUAL ALLEGATIONS COMMON TO THE CLASS

117.     Plaintiffs and putative Class Members are all consumers who sought to purchase a clean energy management system and subsequently entered into an agreement to purchase a solar energy system that included the Generac switches described herein. They believed they were purchasing a premium energy system which, over time, would save on energy costs.

118.     Plaintiffs and putative Class Members relied on Generac's marketing materials, written representations, and/or representations made by Generac's authorized retailers in deciding to purchase the System and believed that they were purchasing a System of merchantable quality, which would work as intended and lower their energy costs. As reasonable consumers, they did not expect that Generac's components would render the System less productive or useless.

119.     At all times, Plaintiffs and putative Class Members exclusively used the System for its normal, intended, residential purposes. However, the System has not performed as expected.

120.     Following installation, Plaintiffs' and putative Class Members' Systems started to experience errors and its performance decreased or stopped entirely.

121.     Because Generac unlawfully failed to disclose and concealed the Defect from Plaintiffs and putative Class Members before their purchase through the present, they did not

suspect (and had no reason to suspect) that there was anything wrong with the Systems until they experienced errors and underperformed.

122.    Plaintiffs and putative Class Members have suffered a loss of energy production and monetary harm as a result of the defective Generac System. Instead of owning a reliable alternative electrical source that can provide and store energy, they have unreliable, defective, unsafe Systems that are subject to outages and malfunctions.

123.    Had they known of the Defect, Plaintiffs and putative Class Members would not have purchased the System or would have paid less for it than they did.

### GENERAC'S ACTUAL OR CONSTRUCTIVE KNOWLEDGE OF THE DEFECT

124.    Generac knew or should have known when it sold the Systems to the public, and during warranty communications, that the Systems suffered from the Defect, and that the Defect caused the Systems to fail and was a safety risk for consumers and their property.

125.    Generac knew or should have known that reasonable consumers and their agents would be unaware of the true defective nature of the Solar Products, and that consumers reasonably expected that the Solar Products they ordered and installed would function properly and not expose them, their homes, and occupants to serious risk of harm.

126.    Instead of disclosing the material safety defects, Generac failed to disclose and did not warn consumers that its Solar Products were defective and unsafe.

127.    Generac had superior and exclusive knowledge of the Defect and the Defect is not reasonably discoverable by consumers until they experience a Snap thermal event or System disruption. As a result of Generac's inaction and silence, consumers are unaware that they have purchased, installed, and continue to have unsafe Systems installed on their homes, while Generac continues to profit from the sale of its Systems to consumers. Plaintiff and similarly situated

consumers would not have purchased and installed Generac Solar Products had they known they were defective and unsafe.

128.    Plaintiffs are informed and believe and based thereon alleges that Generac acquired its knowledge of the material Defect prior to the time Plaintiffs and putative Class Members purchased or leased the Solar Products, including through numerous consumer complaints, warranty submissions, information acquired through its PWRview information and other PWRcell monitoring systems that allow it to monitor System performance, direct communications with Plaintiffs and putative Class Members about the Snaps, and complaints from authorized sellers and installers such as Power Home Solar, LLC d/b/a Pink Energy. To be sure, Pink Energy filed a complaint against Generac detailing consumer and installer complaints to Generac based on Generac's defective SnapRS devices. See *Power Home Solar, LLC d/b/a Pink Energy v. Generac Power Systems*, Case No. 6:22-cv-000430NKM (W.D. Va.).

129.    Generac's knowledge of the Defect is also based on its: research, development, testing, inspections; research, design, testing, development, and release of its firmware update prior to August 2021; research, design, testing, development, and release of its replacement SnapRS 801A model; and research, design, testing, development, and release of its SnapRS 802 model. Plaintiffs also put Generac on notice of the Defect in their Systems in part when they sought installation of the RS802 Snap models, as described *supra*. Despite these updates and model replacements, Generac consistently failed to disclose and actively concealed the Defect from Plaintiff and putative Class Members.

130.    Additionally, upon information and belief, Generac received constant, real-time data about customer's system performance – or lack thereof – through its internet-connected

2844925.1

monitoring platform, which established a direct informational link between Plaintiffs/Class Members and Generac.

131.    Consumer complaints about the Defect are available on Generac's website. For example, LarryS describes a problem with "the Snaps"[51]:



132.    Similarly, on a public Facebook group dedicated to the "Generac PWRcell Systems, Battery Storage, Home Energy, Energy Storage," there are hundreds of complaints about the Defect. For example, on or about March 27, 2022, a consumer posted the following:



**Mark H White**
I don't know on the lawsuit issue.  But, my new system installed in Jan 2022 has one of 3 strings not producing .  never has from day one.  My dealer says it might be a snap rs or pv link.  but won't come to check the system because they say they have no parts .   Generac needs to be held accountable for warrantee issues for sure

26w    Like    Reply



Brian Thomas
September 30 ·

Like many others our Generac PWRcell install started having SnapRS issues and PV Lockout errors. It started with 1 link of 5 panels. Finally after 2 weeks of unaswered phone calls and emails I went to the local solar installers office in person.. Very nicely explained my issue along a few other things I'd like to discuss including adding a ATS for a portable generator.

Later today I got a call back and they are scheduling a team to come out and remove all of the SnapRS as they claim Generac has given permission to operate our systems without them until they can develop a permanent solution. Any others heard about this method?

edit: local installer is Con Edision of NY/CT

(Facebook.com, Generac PWRcell Systems, Battery Storage, Home Energy, Energy Storage Group, last visited on Dec. 27, 2022.)



**Jim Humphrey**
April 26 · 🌐

Known snap rs part defect is my cause of 2 mos and now a 3 mos loss of 25-30% of my solar capacity. Generac defective part should have a reimbursement process for lost power as they also have connectivity to error msgs. Loss of $'s can be quantified in my opinion. I was told new part would be available end of April, 2022. No word yet.



(Facebook.com, Generac PWRcell Systems, Battery Storage, Home Energy, Energy Storage Group, last visited on Dec. 27, 2022.)

However, consumer complaints did not end upon the release and installation of the SnapRS 802 model.

For example:



**Richard Takacs**
Sep 14 · 🌐

I have had a Generac system for a year and half. Nothing but problems. After 802s were installed thought problems were solved. Unfortunately, one bank broke on Jul 26. Installer claims it is not a 802 problem, but has failed to send a crew down for repairs. Alot of promising and maybe"next" week. Are all Generac sub contractors this unreliable? I think a law suit will be the only way to get results.

👍😮 7                    8 comments

2844925.1

Plaintiff Daniel Haak publicly complained on or about September 20, 2022 that he had to

have over 150 replacement Snaps installed, and his System still does not function properly:

 **Daniel Haak**

My generac solar system has had
compnent failure again and again. 56
panels 2 inverters and 3 cell battery.  They
have replaced 6 inverters. 3 of which
exploded,  over 150 snapRS connectors. A
good number of which where burned all
the way through and several pv links. My
system is still having problems. Total
ownership 25 months, time 100%
operational 5%. Generac even had there
own techs here for the last 2 sets of snap
replacements. And still having issues.
Some of it may be installers but the
product is also terrible.

1w    Like    Reply

2844925.1

Consumers have lost all confidence that Generac will be able to resolve the Defect. For example, on or about September 13, 2022, a consumer posted the following:

 **Steven Erat**
First problem I had ended up being the 1st gen SnapRS units, which were replaced by installer/generac with the 2nd gen.

Second type of problem was the PVRSS Lockout Error on 1 of 4 strings (each string has 8 panels). Installer "fixed" that problem 4 times now. Each time they fixed it, the problem returned. Today was the 4th fix, so I'm waiting to see how long it holds. Effectively since operation began, there has been at least 1 string out of commission at any given time. That's a 25% reduction in power generation since the system was turned on.

I have little to no hope of Generac fixing this problem for the long term.

2844925.1

Given the amount that consumers have paid for the Systems, it is clear they have not received the benefit of their bargain:



Are snaps are still busted and pink energy aka power home solar is putting it on generac. I'm a customer and it's disgusting what we and many people are going through. Thanks for a hunk of stuff



133. Generac's knowledge of the Defect is also established through complaints to the Better Business Bureau and Generac's resulting responses to those complaints, as well as through other posts, such as on Reddit and other consumer forums.

134.    For example,



**Initial Complaint**
11/25/2022

**Complaint Type:** Problems with Product/Service
**Status:** Resolved

In late 2020 we had a solar system installed by Powerhome ***** ************** Since the time of installation we've had constant issues with the system going down (mainly due to the SnapRS from Generac). The snaps have been replaced multiple times. In August of 2022, we received a letter from *********** saying that any issues with PVRSS lockout had to go through Generac. Shortly after that *********** filed for bankruptcy. Since September 5 of 2022 we've had 2 PV links that have a total of 13 panels in PVRSS lockout. I've called Generac numerous times and the only information I've been given is you are on the list and someone will contact you about setting up an appointment to come out and service your system-they have no idea when that will be. In the meantime we are paying the full loan amount and are paying higher than normal electric bills which is fast becoming a financial issue. Generac says they will not in any way reimburse customers for systems being down. I would like to have a definite time when someone will be out to repair the system.

> **GENERAC**
> **Business response**
> 12/05/2022
>
> *Hello*
> *Generac is in receipt of this complaint and have escalated this matter to our resolution team for further assistance.*
> *Generac*

(Better Business Bureau, www.bbb.org., Complaints – Generac Power Systems, Inc., last visited on Dec. 27, 2022.)

2844925.1


TroyMcLure963 · 2 mo. ago

Had all my snapRS replaced with the new version after my array was down for 3 months with faulty first gen ones. But now have another issue and they are coming back out again soon. We will see.if it's another snapRS.

⬆ 1 ⬇  💬 Reply  Share  Report  Save  Follow

(Reddit.com, *PwrCellOwners*, last visited on Dec. 27, 2022.)

Posted by u/petersinct 4 months ago

### Looking at Generac solar system

Hi all,

I am considering a Generac solar /battery system with backup generator. In my research, I came across the SnapRS issue. Apparently, earlier this year Generac released a new version of the SnapRS - the SnapRS 802, which is supposed to solve the issue. I am trying to find how those are faring from someone who either has a new Generac system that came with those SnapRS 802's installed, or from someone with an existing system who has had Generac replace their existing 801's with 802's.

Another thing - when the Generac technician came out to the house earlier this week to do some measurements and roof assessment, I asked him about the SnapRS failures. He acknowledged that they have had to replace quite a few of them, but didn't seem to know anything about the new 802 version. He told me that they actually recommend to customers to have their SnapRS REMOVED if it fails, since apparently the electrical code in our state (connecticut) does not require them. I'm not an electrician, but if I understand correctly those SnapRS modules are intended to function as a safety device and it would make me a little nervous to not have them.

Any thoughts?

(Reddit.com, *PwrCellOwners*, last visited on Dec. 27, 2022.) The reddit PwrCellOwners community was founded as early as 2020.



 **Gary of Corbett, OR** ✓ Verified Reviewer

Original review: Nov. 13, 2022

As I write this review, all the PV panels on my roof are off-line. Why, because of PVRSS lock-out errors: aka, the SNAP problem. Since, March of 2022, the system has been off-line more often than not. Generac keeps resetting the system remotely, and promising a real fix. First, they blamed faulty installation, then finally admitted the RS801 SNAP units were defective. After, my system was upgraded with the "new and improved" RS802 SNAP units, then they blamed faulty software. So far, nothing they have done has fixed my system.

Generac's custom service has been a major disappointment. They alternate between blaming anyone and everyone else, or acknowledging there "might" a defect in the system with a "possible" fix in the development. On any given day, the answer you get depends on who answers call or email. They still have not issued any kind of formal statement. Bottom line, we have a >$35K solar system with battery back-up, that cannot reliably produce electrical power or perform its primary mission of providing emergency back-up power - without the PV panels on-line, it can't even attempt to keep the batteries charged after the lost of utility power.

(Consumeraffairs.com/homeowners/generac-power-systems.html, last visited on Dec. 27, 2022.)

135. The exemplary posts above represent only a fraction of the countless online complaints about the System, which, in turn, are only a fraction of the total complaints made directly to Generac about the Defect. Indeed, some of the consumers who posted the complaints above indicate that they also contacted Generac.

136. Upon information and belief, Generac filed a report with the Consumer Product Safety Commission ("CPSC") regarding the Defect but did not issue a recall and continued to conceal the Defect from consumers.

137. Upon information and belief, Generac admits that the failure rate of the Snaps is at least 50%, thereby demonstrating that Generac knows or should know of the Defect.

138. Despite its knowledge about the Defect, Generac did not remedy or eliminate the Defect or remove the Systems from the stream of commerce. Nor did Generac contact consumers

to disclose the Defect, even though Generac was aware of the Defect. Instead, Generac improperly denied warranty claims or replaced the defective Snaps with equally defective components, which failed to adequately address the Defect.

139.   Generac has a duty to disclose the Defect and not to omit or to conceal the Defect from Plaintiffs and putative Class Members. Generac's failure to disclose, or active concealment of, the serious safety Defect places Plaintiffs, putative Class Members, and members of the public at risk of injury and/or property damage.

140.   Moreover, Generac continues to falsely represent through written representations and warranties that the Systems are free from Defect, are of merchantable quality, and will perform dependably for years.

141.   Generac has wrongfully shifted the burden, expense, and difficulty involved in discovering and addressing the Defect to Plaintiffs and putative Class Members.

142.   Generac is currently still selling the Systems, concealing the Defect, failing to notify consumers of the Defect, and failing to recall the Systems.

## TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS

143.   Generac had actual awareness for years that the Systems contain a Defect that causes the Snaps to fail (generally referred to – along with the risks and infirmities associated with and caused by such failure, including safety, operational, and functional unreliability risks, and consequences – as the "Defect").

144.   Although Generac was aware of the Defect, it took no steps to warn Plaintiffs or putative Class Members of such Defect and the dangers it poses.

145.   At least by 2021, if not earlier, Generac had received reports of Snaps failing due to the Defect.

2844925.1

146. Generac had reportedly attempted to resolve the Defect, first through firmware updates and then through new Snap models, without notifying consumers of the Defect or the risks associated with it.

147. To date, Generac has not issued a recall, warned consumers, or taken any other affirmative steps to correct the Defect. Nor has Generac taken steps to alert consumers about the Defect.

148. Despite its knowledge, Generac has fraudulently concealed the fact that the Systems were and are defective, even though it has a duty to disclose the Defect.

149. Generac made affirmative misrepresentations to consumers during the design, manufacture, supply, distribution, and/or sale of the Systems, including that the Systems were free from defects.

150. Generac made affirmative representations to Plaintiffs and putative Class Members during warranty claims and other correspondence with consumers lodging complaints, including that their problems with the Systems have been resolved. Such representations were made in an effort to persuade consumers to accept replacement parts, including replacement Snaps or firmware updates, as supposed remedies.

151. At all times, Generac concealed that the Systems and any remedial measures taken were defective.

152. Generac's concealment was material to Plaintiffs and putative Class Members' decisions to purchase the Systems. Generac's concealment was known, and Generac intended to mislead Plaintiffs and putative Class Members into relying upon it. Accordingly, Plaintiffs and Class Members relied upon Generac's concealment of these material facts and suffered injury as a proximate result of that justifiable reliance.

2844925.1

153.    The uniform Defect in the design and/or manufacture in the Systems was not detectible to Plaintiffs or putative Class Members.

154.    Generac actively and intentionally concealed the existence of the Defect and failed to inform Plaintiffs or putative Class Members of the existence of the Defect at all times, including when they contacted Generac about problems with their Systems. Accordingly, Plaintiffs and putative Class Members' lack of awareness was not attributable to a lack of diligence on their part.

155.    Generac's statements, words, and acts were made for the purpose of suppressing the truth that the Systems and replacements were defective.

156.    Generac concealed the Defect for the purpose of delaying Plaintiffs and putative Class Members from bringing a lawsuit to recover their damages.

157.    As a result of Generac's active omission, concealment of the Defect, and/or failure to inform Plaintiffs and putative Class Members of the Defect, any applicable statutes of limitations otherwise applicable to the allegations herein have been tolled. Furthermore, Generac is equitably estopped from relying on any statutes of limitations in light of its active concealment of the defective nature of the Systems.

158.    Further, the causes of action alleged herein did not occur until Plaintiffs and putative Class Members discovered that their Systems had the Defect. Plaintiffs and putative Class Members had no realistic ability to discern that the Systems were defective until they learned of the existence of the Defect. In either event, Plaintiffs and putative Class Members had no reason to discover their causes of action because of Generac's active concealment of the true nature of the Defect.

2844925.1

## FED. R. CIV. P. 9(b) ALLEGATIONS
### (Affirmative and By Omission)

159.   Although Generac is in the best position to know what content is placed on its website and in marketing materials during the relevant timeframe, to the extent necessary, Plaintiffs and putative Class Members satisfy the requirements of Rule 9(b) by alleging the following facts with particularity:

160.   **WHO**: Generac made material misrepresentations and/or omissions of fact through its website representations, warranties, owner's manuals, marketing, labeling, packaging statements, and representations made by employees receiving warranty claims, which include statements such as that the Systems were not defective, were of high-quality, and were suitable for their purpose of safely and reliably managing electricity.

161.   **WHAT**: Generac's conduct here was, and continues to be, fraudulent because it omitted and concealed that the Systems are (a) defective, in that the Snaps overheat, melt, explode, or otherwise malfunction which substantially diminishes the performance of the Systems; (b) are not of high-quality; (c) could present a safety hazard when used as intended; and (d) could fail prior to the completion of their expected useful life. Generac's employees made affirmative representations to Plaintiffs and putative Class Members regarding the same qualities. Further, Generac's conduct deceived Plaintiffs and putative Class Members into believing that the Systems are not defective, are high-quality, are safe to use, and will last at least as long as the full duration of their expected useful life. Generac knew or should have known this information is material to reasonable consumers, including Plaintiffs and putative Class Members, in making their purchasing decisions, yet it omits any warning that the Systems suffer from the Defect.

162.   **WHEN**: The material misrepresentations and/or omissions detailed herein were made prior to and available at the time Plaintiffs and putative Class Members performed research

on the Systems to gather information that would aid them in selecting the best energy system to purchase; prior to and at the time Plaintiffs and putative Class Members purchased the Systems; prior to and at the time Plaintiffs and putative Class Members made claims about the Defect; and continuously throughout the applicable Class period.

163. **WHERE**: Generac's material misrepresentations and/or omissions were made on its website(s), through marketing materials, in warranties, in user manuals, as well as through statements made by its employees and authorized representatives.

164. **HOW**: Generac made misrepresentations and/or failed to disclose material facts regarding the true nature of the Systems as well as the safety risks of normal use of the Systems in written form, electronic form, or conventional hardcopy form, as well as verbally through statements made by its employees and authorized representatives.

165. **WHY**: Generac made the material misrepresentations and/or omissions detailed herein for the express purpose of inducing Plaintiffs, putative Class Members, and all reasonable consumers to purchase and/or pay for the Systems, the effect of which was that Generac profited by selling the Systems to many thousands of consumers.

166. **INJURY**: Plaintiffs and putative Class Members purchased or paid more for the Systems when they otherwise would not have absent Generac's misrepresentations and/or omissions. Further, the Systems continue to pose unreasonable safety risks of personal injury and damage to property, and cause consumers to incur unnecessary and unreasonable out-of-pocket expenses when the Defect manifests.

## CLASS ACTION ALLEGATIONS

167. Plaintiffs bring this action, including all causes of action stated below, both individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) against Generac on behalf of themselves and all other similarly situated members of the proposed Class

(referred to herein as "Class Members") as defined below. At the class certification stage, in response to discovery and pursuant to any instruction by the Court, the Plaintiffs may modify the class definition(s) in the future.

**Nationwide Class:**

> **During the fullest period allowed by law, all persons who purchased the Generac PWRcell system in the United States within the applicable statute of limitations, until the date notice is disseminated.**

**California Class:**

> **During the fullest period allowed by law, all persons who purchased the Generac PWRcell system in the State of California within the applicable statute of limitations, until the date notice is disseminated.**

**Florida Class:**

> **During the fullest period allowed by law, all persons who purchased the Generac PWRcell system in the State of Florida within the applicable statute of limitations, until the date notice is disseminated.**

**Georgia Class:**

> **During the fullest period allowed by law, all persons who purchased the Generac PWRcell system in the State of Georgia within the applicable statute of limitations, until the date notice is disseminated.**

**Illinois Class:**

> **During the fullest period allowed by law, all persons who purchased the Generac PWRcell system in the State of Illinois within the applicable statute of limitations, until the date notice is disseminated.**

**Indiana Class:**

> **During the fullest period allowed by law, all persons who purchased the Generac PWRcell system in the State of Indiana within the applicable statute of limitations, until the date notice is disseminated.**

**Michigan Class:**

> **During the fullest period allowed by law, all persons who purchased the Generac PWRcell system in the State of Michigan within the applicable statute of limitations, until the date notice is disseminated.**

2844925.1

**Missouri Class:**

During the fullest period allowed by law, all persons who purchased the Generac PWRcell system in the State of Missouri within the applicable statute of limitations, until the date notice is disseminated.

**New York Class:**

During the fullest period allowed by law, all persons who purchased the Generac PWRcell system in the State of New York within the applicable statute of limitations, until the date notice is disseminated.

**North Carolina Class:**

During the fullest period allowed by law, all persons who purchased the Generac PWRcell system in the State of North Carolina within the applicable statute of limitations, until the date notice is disseminated.

**Ohio Class:**

During the fullest period allowed by law, all persons who purchased the Generac PWRcell system in the State of Ohio within the applicable statute of limitations, until the date notice is disseminated.

**Oregon Class:**

During the fullest period allowed by law, all persons who purchased the Generac PWRcell system in the State of Oregon within the applicable statute of limitations, until the date notice is disseminated.

**Pennsylvania Class:**

During the fullest period allowed by law, all persons who purchased the Generac PWRcell system in the State of Pennsylvania within the applicable statute of limitations, until the date notice is disseminated.

**South Carolina Class:**

During the fullest period allowed by law, all persons who purchased the Generac PWRcell system in the State of South Carolina within the applicable statute of limitations, until the date notice is disseminated.

**Tennessee Class:**

During the fullest period allowed by law, all persons who purchased the Generac PWRcell system in the State of Tennessee within the applicable statute of limitations, until the date notice is disseminated.

**Texas Class:**

2844925.1

> During the fullest period allowed by law, all persons who purchased the Generac PWRcell system in the State of Texas within the applicable statute of limitations, until the date notice is disseminated.

**Virginia Class:**

> During the fullest period allowed by law, all persons who purchased the Generac PWRcell system in the State of Virginia within the applicable statute of limitations, until the date notice is disseminated.

168. Specifically excluded from these definitions are: (1) Generac, any entity in which Generac has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel. Plaintiffs reserve the right to amend the Class definitions as necessary.

169. **Numerosity**: The Members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class Members is presently unknown, it likely consists of at least many thousands of people collectively in the state Classes and throughout the United States. The number of Class Members can be determined by sales information and other records. Moreover, joinder of all potential Class Members is not practicable given their numbers and geographic diversity. The Classes are readily identifiable from information and records in the possession of Generac.

170. **Typicality**: The claims of the representative Plaintiffs are typical in that Plaintiffs, like all Class Members, were impacted by the Defect. Plaintiffs and Class Members purchased the Systems with the Defect, which pose a safety risk of personal injury and damage to property. In addition, Generac's misconduct is common to all putative Class Members because Generac has engaged in systematic deceptive and fraudulent behavior that was deliberate and results in the same injury to all Class Members.

2844925.1

171.    **Commonality**: Common questions of law and fact exist as to all Members of the Class. These questions predominate over questions that may affect only individual Class Members because Generac has acted on grounds generally applicable to the Classes. Such common legal or factual questions include, *inter alia*:

    a.     Whether the Systems are defective;

    b.     Whether the Systems are defectively designed and/or manufactured;

    c.     Whether Generac knew or reasonably should have known about the Defect prior to distributing the Systems to Plaintiffs and putative Class Members;

    d.     Whether Generac concealed from and/or failed to disclose to Plaintiffs and putative Class Members the Defect in the Systems;

    e.     Whether Generac knew or reasonably should have known about the Defect after distributing the Systems to Plaintiffs and putative Class Members;

    f.     Whether Generac breached the implied warranty of merchantability;

    g.     Whether Generac breached express warranties relating to the Systems;

    h.     Whether Generac's Limited Warranty is unconscionable;

    i.     Whether Generac should be ordered to disgorge all or part of the ill-gotten profits it received from the sale of the defective Systems;

    j.     Whether Plaintiffs and putative Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

    k.     Whether Plaintiffs and putative Class Members either paid a premium for the Systems that they would not have paid but for Generac's false representations or would not have purchased them at all;

    l.     Whether Plaintiffs and putative Class Members are entitled to injunctive, declaratory, or other equitable relief; and

    m.     Whether Generac engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing defective Systems.

2844925.1

172. **Adequate Representation**: Plaintiffs will fairly and adequately protect the interests of putative Class Members. They have no interests antagonistic to those of Class Members. Plaintiffs retained attorneys experienced in the prosecution of class actions, including consumer product cases, and Plaintiffs intend to prosecute this action vigorously.

173. **Injunctive/Declaratory Relief**: The elements of Rule 23(b)(2) of the Federal Rules of Civil Procedure are met. Generac will continue to commit the unlawful practices alleged herein, and Plaintiffs and Class Members will continue to be deceived by Generac's misrepresentations and omissions and unknowingly be exposed to the risk of harm associated with the Defect in the Systems. Generac has acted and refused to act on grounds that apply generally to the Classes, such that final injunctive relief, public injunctive relief, and corresponding declaratory relief are appropriate respecting the Classes as a whole. Injunctive relief is necessary in this action.

174. **Predominance and Superiority**: Plaintiffs and Class Members have all suffered and will continue to suffer risk of harm and damages as a result of Generac's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. The likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues is not efficient, timely, or proper. Judicial resources will be unnecessarily depleted by resolution of individual claims. Joinder on an individual basis of hundreds or thousands of claimants in one suit would be impractical or impossible. Individualized rulings and judgments could result in inconsistent relief for similarly situated Plaintiffs.

175. Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

2844925.1

176.     Generac has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class appropriate.

177.     Plaintiffs reallege and incorporate by reference the allegations contained in all of the proceeding paragraphs and allegations of this Class Action Complaint, including the factual allegations, tolling allegations, and class action allegations, as though fully set forth in each of the following Claims for Relief ("Counts") asserted on behalf of the Classes.

**COUNT I**
**VIOLATION OF MAGNUSON MOSS WARRANTY ACT**
**15 U.S.C. §§ 2301, *ET SEQ.***
**(On Behalf of All Plaintiffs and the Nationwide Class)**

178.     Plaintiffs reallege and incorporate by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

179.     Plaintiffs bring this claim on behalf of themselves and the Nationwide Class.

180.     This Court has jurisdiction to decide claims brought under the Magnuson-Moss Warranty Act (for the purpose of this Count, the "Act") by virtue of 28 U.S.C. § 1332(a)-(d) and/or 28 U.S.C. § 1367.

181.     The Systems are "consumer products" within the meaning of the Act. 15 U.S.C. § 2301(1).

182.     Generac is a "supplier" and "warrantor" within the meaning of 15 U.S.C. § 2301(4) and (5). Plaintiffs and the other Class Members are "consumers" who purchased "consumer products" for purposes of 15 U.S.C. § 2301(1) and (3) because they purchased the Systems for personal, family, or household purposes.

183.     The Act provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. 15 U.S.C. § 2310(d)(1).

184.    Under the Act, damaged "consumers" have a private cause of action against any warrantor that fails to comply with a written or implied warranty.

185.    The terms of written warranties and implied warranty were part of the basis of the bargain between Plaintiffs and all other Class Members when purchasing their solar energy and battery storage system equipped with the SnapRS 801 switches – the System.

186.    Generac breached these written and implied warranties as described in detail above.

187.    The Systems share common design defects, which defects generate heat in the Systems switches causing them to melt, deform, and/or catch fire during normal use – referenced herein as the Defect. Plaintiff and each of the Nationwide Class Members have had sufficient direct dealings with either Generac or its agents (including Generac authorized dealers or solar contractors—the companies that installed their residential solar energy systems) to establish privity of contract between Generac, on the one hand, and Plaintiffs and each of the other Nationwide Class Members, on the other hand. Alternatively, and without prejudice to the foregoing, privity is not required because Plaintiffs and each of the other Nationwide Class members are intended third-party beneficiaries of contracts between Generac and its authorized dealers, and specifically, of Generac's implied warranties. The authorized dealers (solar contractors) were not the intended ultimate consumers of Systems, have no rights under the warranty agreements provided with the Systems and such warranty agreements were designed for and intended to benefit the Plaintiffs and Nationwide Class Members only.

188.    At all times material herein, Generac has actively concealed the existence and nature of the Defect from Plaintiffs and Class Members, despite its knowledge of the existence and pervasiveness of the Defect, and certainly well before Plaintiffs and Class Members purchased the Systems and during warranty communications. Specifically, Generac has:

2844925.1

a. Failed to disclose the Defect to consumers, at or after the time of purchase, including when consumers make warranty claims or otherwise complain to Generac about the Defect;

b. Actively concealed the Defect from consumers, at or after the time of purchase, including when consumers make warranty claims, or otherwise complain to Generac about the Defect;

c. Failed to disclose, and actively concealed the Defect from consumers, including that the Systems, were not fit for their intended purpose;

d. Failed to disclose and actively concealed the Defect from consumers when it provided them with replacement components that contained the same or similar Defect;

e. Failed to disclose and actively concealed the Defect from consumers when it provided them with firmware it knew would fail to remedy the Defect;

f. Failed to disclose and actively concealed the Defect from consumers when it provided them with replacement components, without remedying the actual Defect, and when it knew the Systems could fail again; and

g. Failed to disclose and actively concealed the Defect from consumers when it announced the availability of the 802 Snap model as a performance-enhancing Snap without disclosing the Defect, making the 802 Snaps generally available to consumers to install in their Systems, and not actually remedying the Defect with the 802 Snap model.

189. Generac has refused to compensate Plaintiffs' and Class Members' damages arising from decreased energy production from their Systems and premature failure caused by the Defect, despite the fact that malfunctioning SnapRS 801 switches are covered by the warranty.

190. Affording Generac a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here. On or after April 2021 and possibly before, at all times material, Generac knew, should have known, or was reckless in not knowing, of its misrepresentations and omissions concerning the Systems – and specifically including the SnapRS 301 switches – to perform as warranted rendering the System defective. Nonetheless, it failed to rectify the situation and/or disclose the Defect and related safety hazards. Under the circumstances,

any limited warranty asserted by Generac is procedurally and substantively unconscionable as more fully alleged above, the remedies available under any informal settlement procedure would be inadequate, and any requirement for Plaintiffs to resort to an informal dispute resolution procedure and/or afford Generac a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

191.    As a direct and proximate result of Generac's breach of the written warranties and the implied warranty of merchantability, Plaintiffs and Class Members have suffered damages in an amount to be determined at trial.

192.    Plaintiffs' and Class Members' individual claims meet or exceed $25.00 in value. The amount in controversy collectively on behalf of the Class meets or exceeds $50,000.00 in value (exclusive of interest and costs) on the basis of all claims to be determined in this suit.

193.    Plaintiffs and the Nationwide Class seek all damages permitted by law, including incidental and consequential damages, compensatory damages, court costs and attorneys' fees, and any other just and proper relief available under the Act.

<u>**COUNT II**</u>
**BREACH OF IMPLIED WARRANTY**
**UNDER THE UNIFORM COMMERCIAL CODE § 2-314**
**(On Behalf of All Plaintiffs the Nationwide Class and, In the**
**Alternative, Each State Class)**

194.    Plaintiffs reallege and incorporate by reference the allegations contained in all preceding paragraphs as though set forth fully herein.

195.    Plaintiffs bring this claim on behalf of themselves and all members of the Nationwide Class and, in the alternative, all members of each state Class, for breach of implied warranty pursuant to Uniform Commercial Code ("UCC") § 2-314.[52]

---

[52] In the alternative to the Uniform Commercial Code § 2-314, Plaintiffs bring this Count pursuant to the analogous implied warranty laws for the states in which they reside, including

196. Plaintiffs assert claims for breach of implied warranty of merchantability under U.C.C. § 2-314, which has been adopted by and is materially the same under the laws of each state (except Louisiana), the District of Columbia, and Puerto Rico or which can be sorted into a small number of groups containing materially identical elements.

197. Generac is and was at all relevant times a merchant as defined by U.C.C. § 2-104 298. The Systems are and were at all relevant times goods as defined by U.C.C. § 2-105.

198. The U.C.C. states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." U.C.C. § 2-314(1).

199. The U.C.C. states that "goods to be merchantable must … conform to the promises or affirmations of fact made on the container or label if any." U.C.C. § 2-314(2)(f).

200. Plaintiffs and members of the Nationwide Class and each state Class purchased the Systems manufactured and marketed by Generac by and through Generac's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Generac's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Generac was the merchant, manufacturer, marketer, warrantor, and/or seller of the Systems.

201. The implied warranty of merchantability included with the sale of each System means that Generac warranted that the Systems would be fit for the ordinary purposes for which

_____

Florida (Fla. Stat. § 672.314), Georgia (Ga. Code Ann. § 11-2-314(1)), Illinois (810 ILCS 5/2-314), Indiana (Ind. Code § 26-1-2-314), Michigan (Mich. Comp. Laws § 440.314), Missouri (R.S.Mo. § 400.2-314), New York (N.Y. U.C.C. Law § 2-314), North Carolina (N.C. Gen. Stat. § 25-2-314), Ohio (in tort under common law), Oregon (Or. Rev. Stat. §72.3140), Pennsylvania (13 Pa. Cons. Stat. Ann. § 2314), South Carolina (S.C. Code § 36-2-314), Tennessee (Tenn. Code 47-2-314), Texas (Tex. Bus. & Com. Code § 2.314), and Virginia (Va. Code Ann. § 8.2-314).

the Systems were used and sold, and were not otherwise injurious to consumers, that the Systems would pass without objection in the trade, be of fair and average quality, and conform to the promises and affirmations of fact made by Generac. This implied warranty of merchantability is part of the basis for the benefit of the bargain between Generac, Plaintiffs, the Nationwide Class Members and each of the state Class Members.

202. Generac impliedly warranted that the Systems were of merchantable quality and fit for such use. These implied warranties included, among other things: (i) a warranty that the Systems manufactured, supplied, distributed, and/or sold by Generac were safe to use; and (ii) a warranty that the Systems would be fit for their intended use while they were being used by consumers.

203. Contrary to the applicable implied warranties, the Systems, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with safe and reliable electricity management. Instead, the Systems suffered, and continue to suffer, from a design and/or manufacturing defect, as alleged herein.

204. Generac breached the implied warranty of merchantability because the Systems are not fit for their ordinary purpose of safely and reliably managing electricity because, *inter alia*, the Systems contain the Defect, which ceases or decreases performance of the Systems. Therefore, the Systems are not fit for their particular purpose of safely and reliably generating power, or managing electricity.

205. The problems associated with the Defect are safety risks such that the Systems do not provide safe and reliable power generation or electricity management, and therefore, there is a breach of the implied warranty of merchantability.

206.     Generac's warranty expressly applies to the original purchaser and any succeeding owner of the Systems on the original purchasing site, creating privity between Generac on the one hand, and Plaintiffs and Class Members on the other.

207.     Nonetheless, privity is not required because Plaintiffs and Class Members are the intended beneficiaries of Generac's warranties and its sales through retailers. Generac's retailers were not intended to be the ultimate consumers of Systems and have no rights under the warranty agreements. Generac's warranties were designed for and intended to benefit the consumer only and Plaintiffs and Class Members were the intended beneficiaries.

208.     More specifically, Generac's intention that its warranties apply to Plaintiffs and Class Members as third-party beneficiaries is evident from the statements contained in its product literature, including the Limited Warranty. Likewise, it was reasonably foreseeable that Plaintiffs and Class Members would be the intended beneficiaries of the Systems (as they are Systems intended, marketed, and sold for residential—and not retail—use) and warranties.

209.     Generac's failure to adequately repair or replace the defective Systems caused the warranty to fail in its essential purpose.

210.     Generac breached the implied warranties because the Systems were sold with a design and/or manufacturing Defect, which substantially reduced or ceased the expected performance of the Systems and made them unsafe during ordinary, intended, residential use.

211.     As a direct and proximate result of the foregoing, Plaintiffs and Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

212.     Generac had notice of these claims at least as of July 2020, when one or more Plaintiffs provided notice directly to Generac of the problems with their systems and demanded

corrective actions for the unfair or deceptive acts described *supra*, with additional notice provided by additional Plaintiffs and Class Members on a rolling basis thereafter. Each Plaintiff has also provided notice of their claims as of the date of the filing of their original complaint and/or this Consolidated Amended Class Action Complaints. In addition, Generac had notice of Plaintiffs' claims and the problems with their systems due to monitoring of Plaintiffs and Class Members' Systems via their applications and connection to the Internet. Furthermore, Plaintiffs need only provide notice to the seller, not the manufacturer, which, upon information and belief, each Plaintiff has previously done in some form or another. Notwithstanding Plaintiffs' provisions of notice, any such notice is futile as there is no non-defective replacement component to cure the Defect alleged herein nor has Generac provided any adequate replacement component.

## COUNT III
## BREACH OF EXPRESS WARRANTY
### UNDER THE UNIFORM COMMERCIAL CODE § 2-313
#### (On Behalf of All Plaintiffs, the Nationwide Class and,
#### In the Alternative, Each State Class)

213. Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

214. Plaintiffs bring this claim on behalf of themselves, and members of the Nationwide Class for breach of express warranty pursuant to Uniform Commercial Code ("UCC") § 2-313, or, in the alternative, on behalf of members of each State Class.[53]

---

[53] In the alternative to the Uniform Commercial Code § 2-313, Plaintiffs bring this Count pursuant to the analogous express warranty laws for the states in which they reside, including Florida (Fla. Stat. § 672.313, 680.21 and 680.1031), Georgia (Ga. Code Ann. § 11-2-313), Illinois (Ill. Comp. Stat. 5/2-313), Indiana (Ind. Code §§ 26-1-2-313 and 26-1-2.1-210), Michigan (Mich. Comp. Laws § 440.2313, 440.2803, and 440.2860), Missouri (R.S.Mo. § 400.2-313, and § 400.2A-210), New York (N.Y. U.C.C. Law §§ 2-313 and 2A-210), North Carolina (N.C. Code §§ 25-2-313 and 25-2A-210), Ohio (Ohio Rev. Code §§ 1302.26 and 1310.17), Oregon (Or. Rev. Stat. §§ 72.3130 and § 72A.2100), Pennsylvania (13 Pa. Cons. Stat. Ann. § 2313 and 2A103), South Carolina (S.C. Code of Laws §§ 36-2-313 and 36-2A-210), Tennessee

215.    Plaintiffs assert claims for breach of express warranties by affirmation, promise, description, or sample under U.C.C. § 2-313, which has been adopted by and is materially the same under the laws of each state (except Louisiana), the District of Columbia, and Puerto Rico, or which can be sorted into a small number of groups containing materially identical elements.

216.    Generac is and was at all relevant times a "merchant" as defined by U.C.C. § 2-104. The Systems are and were at all relevant times "goods" as defined by U.C.C. § 2-105.

217.    U.C.C. § 2-313 states that a merchant creates an express warranty by making to the buyer "[a]ny affirmation of fact or promise … which relates to the goods and becomes part of the basis of the bargain" and "any description of the goods which is made part of the basis of the bargain."

218.    Plaintiffs and members of the Nationwide Class, and each State Class, purchased the Systems manufactured and marketed by Generac by and through Generac's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Generac's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Generac was the merchant, manufacturer, marketer, warrantor, and/or seller of the Systems.

219.    In connection with its sale of the Systems, Generac, as the designer, manufacturer, marketer, distributor, or seller, expressly warranted that the Systems were safe and reliable at generating power and managing electricity.

---

(Tenn. Code § 47-2-313), Texas (Tex. Bus. & Com. Code § 2.313), and Virginia (Va. Code Ann. § 8.2-313 and 8.2A-210).

2844925.1

220.    Generac's uniform warranty representations consist of its pervasive marketing campaign, including the representations described herein that are made online and in its materials and samples.

221.    The uniform express written warranties covering the Systems were a material part of the bargain between Generac and consumers. At the time it made these express warranties, Generac knew reasonable consumers, including the named Plaintiffs and Class Members, were purchasing the Systems because they believed the System to be as represented and marketed.

222.    Each of the Systems has an identical or substantially identical product representation(s) as Generac represents that all its Systems safely and reliably generate power and manage electricity.

223.    Generac breached its express warranties by selling Systems that were, in actuality, not safe and reliable at generating power and managing electricity as promised in the labeling and marketing. Generac breached the warranty because it sold the Systems with the aforesaid design and/or manufacturing Defect, which was known to Generac and unknown to consumers at the time of sale. The Defect of the Systems that Plaintiffs and putative Class Members purchased makes them unable to safely and reliably generate power and manage electricity and causes loss of the System, loss of use of the System, and loss of the benefit of their bargain.

224.    Generac further breached its express warranties because it improperly and unlawfully denies valid warranty claims, and it has failed or refused to adequately repair the Defect or replace the Systems with units that are actually as represented.

225.    Generac breached its express warranty to adequately repair the Defect or replace the Systems despite its knowledge of the Defect, and/or despite its knowledge of alternative formulations, designs, materials, and/or options for manufacturing the Systems.

226. Generac further breached its express written warranties to Plaintiffs and Class Members in that the Systems contain the Defect at the time they leave the manufacturing plant, and on the first day of purchase, and by failing to disclose and actively concealing this risk from consumers.

227. Plaintiffs and Class Members relied upon the express warranty provided by Generac in purchasing the Systems.

228. Generac's warranty expressly applies to the original purchaser and any succeeding owner of the Systems at the original site of the System for Systems purchased within the United States, creating privity between Generac on the one hand, and Plaintiffs and Class Members on the other.

229. Likewise, it was reasonably foreseeable that Plaintiffs and Class Members would be the intended beneficiaries of the Systems and warranties, creating privity or an exception to any privity requirement. Plaintiffs and Class Members are the intended beneficiaries of Generac's warranties and its sale through retailers. The retailers were not intended to be the ultimate consumers of the Systems and have no rights under the warranty agreements provided by Generac. Generac warranties were designed for and intended to benefit the consumer only and Plaintiffs and Class Members were the intended beneficiaries of the Systems as the Systems are intended, marketed, and sold for residential—and not retail—use.

230. Generac has been provided sufficient notice of its breaches of the express warranties associated with the Systems.

231. Upon information and belief, Generac received further notice and has been on notice of its breach of warranties through its sale of the Systems and of its breaches of warranties

through customer warranty claims reporting problems with the Systems, consumer complaints at various sources, and its own internal and external testing.

232.    As a direct and proximate result of Generac's breach of its express written warranties, Plaintiffs and Class Members suffered damages and did not receive the benefit of the bargain and are entitled to recover compensatory damages, including, but not limited to, the cost of inspection, repair, and diminution in value. Plaintiffs and Class Members suffered damages at the point-of-sale stemming from their overpayment for the Systems, in addition to loss of the Systems and its intended benefits.

233.    Generac had notice of these claims at least as of July 2020, when one or more Plaintiffs provided notice directly to Generac of the problems with their systems and demanded corrective actions for the unfair or deceptive acts described *supra*, with additional notice provided by additional Plaintiffs and Class Members on a rolling basis thereafter. Each Plaintiff has also provided notice of their claims as of the date of the filing of their original complaint and/or this Consolidated Amended Class Action Complaints. In addition, Generac had notice of Plaintiffs' claims and the problems with their systems due to monitoring of Plaintiffs and Class Members' Systems via their applications and connection to the Internet. Furthermore, Plaintiffs need only provide notice to the seller, not the manufacturer, which, upon information and belief, each Plaintiff has previously done in some form or another. Notwithstanding Plaintiffs' provisions of notice, any such notice is futile as there is no non-defective replacement component to cure the Defect alleged herein nor has Generac provided any adequate replacement component.

2844925.1

## COUNT IV
## BREACH OF CONTRACT/BREACH OF COMMON LAW WARRANTY
### (On behalf of All Plaintiffs and the Nationwide Class and,
### In the Alternative, Each State Class)

234.    Plaintiffs reallege and incorporate by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

235.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class, and, in the alternative, each State Class.

236.    To the extent Generac's commitment is deemed not to be a warranty under the Uniform Commercial Code or common law, Plaintiffs plead in the alternative under common law warranty and contract law.

237.    Plaintiffs and Class Members purchased the Systems from Generac through its authorized retailers.

238.    Generac expressly warranted that the Systems were fit for their intended purpose of safely and reliably managing electricity and that they were free from defects.

239.    Generac made the foregoing express representations and warranties to all consumers, which became the basis of the bargain between Plaintiffs and putative Class Members, and Generac.

240.    Generac breached the warranties and/or contract obligations by placing the defective Systems into the stream of commerce and selling them to consumers, when it knew the Systems contained the Defect, were prone to premature failure, and did not safely and reliably generate power or manage electricity. These deficiencies substantially and/or completely impair the use and value of the Systems.

241.    The deficiencies described existed when the Systems left Generac's possession or control and were sold to Plaintiffs and Class Members. The deficiencies and impairment of the use

2844925.1

and value of the Systems were not discoverable by Plaintiffs and Class Members at the time of purchase of the Systems.

242. As a direct and proximate cause of Generac's breach of contract, Plaintiffs and Class Members were harmed because they would not have purchased the Systems if they knew the truth about the defective condition of the Systems by virtue of their common Defect.

**COUNT V**
**FRAUDULENT CONCEALMENT**
**(On Behalf of All Plaintiffs and the Nationwide Class and,**
**In the Alternative, Each State Class)**

243. Plaintiffs reallege and incorporate by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

244. Plaintiffs bring this claim on behalf of themselves, the Nationwide Class and, in the alternative, each State Class.

245. At all times material herein, Generac has actively concealed the existence and nature of the Defect from Plaintiffs and Class Members, despite its knowledge of the existence and pervasiveness of the Defect, and certainly well before Plaintiffs and Class Members purchased the Systems and during warranty communications. Specifically, Generac has:

    a.    Failed to disclose the Defect to consumers, at or after the time of purchase, including when consumers make warranty claims or otherwise complain to Generac about the Defect;

    b.    Actively concealed the Defect from consumers, at or after the time of purchase, including when consumers make warranty claims, or otherwise complain to Generac about the Defect;

    c.    Failed to disclose, and actively concealed the Defect from consumers, including that the Systems, specifically the Snaps, were not fit for their intended purpose;

    d.    Failed to disclose and actively concealed the Defect from consumers when it provided them with replacement Snaps that contained the same or similar Defect;

2844925.1

e.   Failed to disclose and actively concealed the Defect from consumers when it provided them with firmware it knew would fail to remedy the Defect;

f.   Failed to disclose and actively concealed the Defect from consumers when it provided them with replacement Snaps, without remedying the actual Defect, and when it knew the Systems could fail again; and

g.   Failed to disclose and actively concealed the Defect from consumers when it announced the availability of the 802 Snap model as a performance-enhancing Snap without disclosing the Defect, making the 802 Snaps generally available to consumers to install in their Systems, and not actually remedying the Defect with the 802 Snap model.

246.   Generac knew and should have known that the Systems contained the Defect.

247.   Generac knew that these material facts and common defects regarding the functioning and safety of the Systems should be disclosed. Generac concealment and failure to disclose these material facts and known common defects induced Plaintiffs and Class Members to act by purchasing—through solar contractors the Systems equipped with the Defect.

248.   Generac had a duty to disclose these material facts – the Defect – before and after Plaintiffs and Class Members purchased their solar energy systems.

249.   Nonetheless, Generac failed to notify Plaintiffs and Class Members of the Defect of the Systems.

250.   Generac's concealment or failure to disclose the Defect common to the Systems was material to consumers because the Defect affected the functional ability and safety of Plaintiffs' and Class Members' Systems.

251.   Plaintiffs and Class Members detrimentally relied on Generac's fraudulent concealment, and Generac intended for this reliance. Plaintiffs and Class members had no way of discerning that Generac was, in fact, deceiving them because the Systems were sophisticated technology and the Defect could only be discerned by solar contractors after significant troubleshooting, not by consumers.

2844925.1

252.    As a direct and proximate result of Generac's fraudulent concealment, Plaintiffs and Class Members sustained damages.

253.    Generac's conduct was fraudulent, egregious and, by subjecting Plaintiffs and Class Members to risk of physical harm and fire damage, demonstrated a depraved heart and reckless indifference to their health, welfare, and safety, entitling Plaintiffs and Class Members to punitive damages.

**COUNT VI**
**FRAUD-INTENTIONAL MISREPRESENTATION**
**(On Behalf of All Plaintiffs and the Nationwide Class and,**
**In the Alternative, Each State Class)**

254.    Plaintiffs reallege and incorporate by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

255.    Plaintiffs bring this claim on behalf of themselves, the Nationwide Class and, in the alternative, each State Class.

256.    As alleged above, Generac made the aforesaid false statements of material fact to solar contractors and the public that Generac's Systems were fit for their intended purpose and were of marketable quality, including that they were safe and that their functioning was reliable.

257.    Generac knew and should have known that the Systems contained the Defect.

258.    Generac provided Plaintiffs and Class Members with false or misleading material information that misrepresented and failed to disclose material facts about the true nature of the Systems, including the fact that they contained the Defect which rendered them incapable of safely and reliably managing electricity.

259.    Generac knew that the statements were false at the time they were made.

2844925.1

260.    Generac had exclusive knowledge of the Defect at the time of sale and at all other relevant times. Neither Plaintiffs nor Class Members, in the exercise of reasonable diligence, could have independently discovered the Defect prior to purchase.

261.    Plaintiffs were not aware of anything in Generac's advertising publicity, or marketing materials that disclosed to or otherwise informed them of the truth about the Systems – their Defect – despite Generac's knowledge and awareness of the Defect. Misrepresentations regarding the safety and functionality of the Systems and the Defect are material facts in that a reasonable person would have considered them important in deciding whether to purchase (or pay the same price for) the Systems.

262.    Generac intentionally failed to disclose material facts for the purpose of inducing Plaintiffs and Class Members to act thereon.

263.    Plaintiffs and Class Members justifiably acted or relied upon the concealed and/or nondisclosed facts to their detriment, as evidenced by their purchase of the Systems.

264.    Generac had the capacity to, and did, deceive Plaintiffs and Class Members, into believing they were purchasing Systems free from defects.

265.    Generac made the false statements for the purpose of inducing Plaintiffs and Class Members to purchase—through solar contractors— Generac's Systems equipped with the Defect.

266.    Plaintiffs and Class Members suffered a loss of money in an amount to be proven at trial as a result of Generac's fraudulent conduct because they would not have purchased the Systems or would not have purchased the Systems for the price they did, if the true facts concerning the Systems and the Defect had been known.

267.    Plaintiffs and Class Members are entitled to all relief the Court deems proper as a result of Generac's actions described herein. Plaintiffs are not aware of anything in Generac's

advertising, publicity, or marketing materials that disclosed the truth about the Systems, despite Generac's awareness of the Defect.

268.     As a direct and proximate result of Generac's fraud, Plaintiff and Class Members sustained damages.

<u>**COUNT VII**</u>
**NEGLIGENT MISREPRESENTATION**
**(On Behalf of the Named Plaintiffs and the Nationwide Class and,**
**In the Alternative, Each State Class)**

269.     Plaintiffs hereby adopt and incorporate by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

270.     Plaintiffs bring this claim on behalf of themselves, the Nationwide Class, and, in the alternative, each State Class.

271.     Plaintiffs must prove the following for a negligent misrepresentation claim: (1) a false statement of a material fact; (2) Generac's knowledge that the statement was false; (3) Generac's intent that the statement induce plaintiffs to act; (4) Plaintiffs' reliance upon the truth of the statement; and (5) Plaintiffs' damages resulting from reliance on the statement.

272.     As a seller of the Systems and a merchant, Generac had a duty to give correct information to Plaintiffs and Class Members regarding the truth about whether the Systems contain a defect.

273.     Generac had sole possession and control of this information and had a duty to disclose it accurately to Plaintiffs and Class Members.

274.     Generac falsely represented that the Systems were safely and reliably able to generate power and manage electricity, when in reality, the Defect renders the System unable to do so. Generac knew, or should have known, that the Systems contained the Defect.

2844925.1

275.    All the while, when making its representations to Plaintiffs and Class Members and despite the fact that it knew, and in the exercise of reasonable diligence would have known, of the existence and pervasiveness of the Defect, including well before Plaintiffs and Class Members purchased the Systems, and during warranty communications, Generac:

      a.    Did not disclose the Defect to consumers, at or after the time of purchase, including when consumers make warranty claims or otherwise complain to Generac about the Defect;

      b.    Did not disclose the Defect from consumers, including that the Systems, were not fit for their intended purpose;

      c.    Did not disclose the Defect from consumers when it provided them with replacement components that contained the same or similar Defect;

      d.    Did not disclose the Defect from consumers when it provided them with firmware it knew would fail to remedy the Defect;

      e.    Did not disclose the Defect from consumers when it provided them with replacement components, without remedying the actual Defect, and when it knew the Systems could fail again; and

      f.    Did not disclose the Defect from consumers when it announced the availability of the 802 Snap model as a performance-enhancing Snap without disclosing the Defect, making the 802 Snaps generally available to consumers to install in their Systems, and not actually remedying the Defect with the 802 Snap model.

276.    The information supplied by Generac—that the Systems are safely and reliably function and provide power generation and manage electricity—was known by Generac to be material to Plaintiffs and Class Members when making their purchase decisions to induce them to purchase the Systems. Generac knew that making these representations would induce customers to purchase its Systems over energy systems offered by competitors.

277.    Generac was negligent in making false statements to solar contractors and the public that Generac's Systems equipped with the Defect were fit for their intended purpose and were of marketable quality.

278. Generac should have known that the statements were false.

279. Plaintiffs and Class Members justifiably relied upon Generac's representations that the Systems were safely and reliably function and provide power generation and manage electricity when purchasing the Systems. Further, this reliance was, in fact, to their detriment because Plaintiffs and Class Members purchased the Systems containing the Defect.

**COUNT VIII**
**NEGLIGENCE**
**(On Behalf of the Named Plaintiffs and the Nationwide Class and,**
**In the Alternative, Each State Class)**

280. Plaintiffs hereby adopt and incorporate by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

281. Plaintiffs bring this claim on behalf of themselves, the Nationwide Class, and, in the alternative, each State Class.

282. Generac owed a duty to exercise reasonable care in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling the Systems placed into the stream of commerce, including a duty to assure that the System would perform as intended and would not cause did not cause damage as described herein.

283. Generac breached its duty by failing to exercise ordinary care in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling the System that Generac placed into the stream of commerce in that Generac knew or should have known that the product was defective, did not function as intended and represented.

284. The negligence of Generac, its agents, servants, and/or employees, included, but was not limited to, the following acts and/or omissions:

    a.    manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling System without thoroughly testing it;

2844925.1

b.    manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling System without adequately testing it;

c.    negligently failing to adequately and correctly warn the Plaintiffs, the Class members and the public, of the dangers of the Systme;

d.    negligently failing to recall or otherwise notify users at the earliest date that it became known that the System was, in fact, defective;

e.    negligently advertising and recommending the use of the System without sufficient knowledge as to its defects;

f.    negligently representing that System was safe for its intended purpose when, in fact, its safety is questionable;

g.    concealing information concerning reports of the defect from the Plaintiffs and the Class members while knowing that the System was defective and non-conforming with accepted industry standards; and

h.    improperly omitting, concealing, and/or misrepresenting information from the Plaintiffs, the Class members and/or the public, concerning the defect.

285.    Upon information and belief, despite the fact that Generac knew or should have known that its System was defective and did not perform as intended, Generac continued to manufacture, process, distribute, deliver, supply, market and/or sell System to the Plaintiffs, the Class members and/or the consuming public.

286.    Generac knew or should have known that consumers such as Plaintiffs and the Class members would foreseeably suffer economic damage and/or be at an increased risk of suffering damage and injury as a result of Generac's failure to exercise ordinary care, as well as Generac's negligent manufacturing process, as set forth herein.

287.    Generac knew or should have known that Plaintiffs and the Class members would foreseeably suffer injury, and/or be at increased risk of suffering injury, as a result of Generac's failure to exercise ordinary care, as well as Generac's negligent manufacturing and design process, as set forth above.

2844925.1

288.     Generac's negligence was the proximate cause of Plaintiffs' and the Class members' damages, injuries, harm and economic loss which they suffered and will continue to suffer.

289.     By reason of the foregoing, Plaintiffs and the Class members experienced and/or are at risk of experiencing serious damage, as well as has incurred financial damage and injury.

290.     As a direct and proximate result of Generac's misconduct, Plaintiffs and the Class members have been damaged in an amount to be proven at trial.

291.     In addition to compensatory damages, Plaintiffs and the Class members are entitled to punitive damages, because Generac's conduct was gross, oppressive, aggravated, or involved a breach of trust or confidence.

## COUNT IX
## UNJUST ENRICHMENT
### (On Behalf of All Plaintiffs and the Nationwide Class and, In the Alternative, Each State Class)

292.     Plaintiffs hereby reallege and incorporate by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

293.     This alternative claim is asserted on behalf of Plaintiffs and Class Members to the extent there is any determination that any contracts between Class Members and Generac do not govern the subject matter of the disputes with Generac, or that Plaintiffs do not have standing to assert any contractual claims against Generac.

294.     Plaintiffs and Class Members conferred a monetary benefit on Generac, and Generac had knowledge of this benefit. Generac voluntarily accepted and retained the benefit conferred by Plaintiff and Class Members in the form of profits from selling its Systems equipped with the Defect. The cost of the System is at least $50,000.00, and higher.

295.     Generac knowingly accepted the unjust benefits of its misconduct.

296. By its wrongful acts and omissions described herein, including selling the defective Systems, Generac was unjustly enriched at the expense of Plaintiffs and Class Members.

297. Plaintiffs and Class Members' detriment and Generac's enrichment were related to and flowed from the wrongful conduct alleged in this Class Action Complaint.

298. It would be inequitable for Generac to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the defective Systems.

299. Plaintiffs and Class Members seek restitution from Generac and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Generac from their wrongful conduct and establishing a constructive trust from which Plaintiffs and Class Members may seek restitution.

<u>**CALIFORNIA**</u>

<u>**COUNT X**</u>
**UNLAWFUL, UNFAIR AND FRAUDULENT BUSINESS PRACTICES**
**CAL. BUS. & PROF. CODE § 17200, *ET SEQ.***
**(On Behalf of Plaintiffs Locatell, Moon, Ward, and the California Class)**

300. Plaintiffs Ward, Locatell and Moon reallege and incorporate by reference the allegations contained in all preceding paragraphs as if fully set forth herein.

301. Plaintiffs bring this claim on behalf of themselves and the California Class.

302. Generac's practices as alleged in this complaint constitute unlawful, unfair, and fraudulent business practices under California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq.* ("UCL").

303. Generac committed unlawful, fraudulent and/or unfair business practices in violation of the UCL because it, among other things: (a) knew or should have known that its Solar Products contained a dangerous Defect; (b) knew or should have known Plaintiffs and California

2844925.1

Class Members could not learn or discover the Defect; (c) failed to disclose the Defect in the Systems; and (d) engaged and continues to engage in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and California Class Members.

304. Among other things, Generac: (a) failed to disclose and/or concealed from Plaintiffs and California Class Members at the time of sale that its System(s) contained a significant safety Defect as detailed herein; and (b) failed to repair, replace, or recall the defective Systems. Because the Defect is not observable, reasonable Plaintiffs and California Class Members were deceived into purchasing Systems with the Defect.

305. Plaintiffs and California Class Members have suffered injury in fact as a result of Generac's unlawful, unfair, or fraudulent practices, in that, among other things: (a) they would not have purchased the Systems; (b) they have been deprived of making an informed decision about the Systems they purchased; and (c) they would not have endangered themselves or the occupants of their households with these dangerously defective Systems.

306. As an entity with exclusive knowledge regarding the Defect, Generac had a duty to disclose the Defect, particularly in light of the fact that the Defect poses risks of significant injury and economic losses to Plaintiffs and the California Class Members.

307. Plaintiffs and the California Class Members reasonably expected that Generac would disclose the existence of the Defect to consumers and the public, and reasonably expected that Generac would not sell or lease a product that was defective and unsafe and/or that failed to provide consistent, reliable, and dependable solar energy. This information is and was material to Plaintiffs and California Class Members.

308. Generac, at all times relevant, knew or should have known that Plaintiffs and California Class Members did not know of, or could not have reasonably discovered, the risks related to the Defect.

309. By concealing the existence of the Defect, Generac engaged in actionable, fraudulent conduct within the meaning of the UCL.

310. Had Plaintiffs and the California Class Members known that the Systems were defective, they would not have purchased or leased them. In addition, Plaintiffs and the California Class Members have lost the benefit of their bargain as the Systems they paid for are not worth the price paid due to their defective condition.

311. Generac's business acts and practices alleged herein are unfair within the meaning of the UCL. Specifically, by failing to disclose and actively concealing the existence of the Defect in the Systems, Generac has engaged in unfair conduct within the meaning of the UCL.

312. Generac's misconduct is unfair within the meaning of the UCL: it offends established policy and/or is immoral, unethical, unscrupulous, and substantially injurious to consumers; its utility, if any, is outweighed by the gravity of the consequences to Plaintiffs and the California Class Members; and it undermines or violates the stated policies underlying the California Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA"), which seeks to protect consumers against unfair and sharp business practices and promote a basic level of honesty and reliability in the marketplace, and thus provides a sufficient predicate for Plaintiffs' aforesaid claims for unfair business practices.

313. Generac committed unlawful acts and practices by, among other things, engaging in conduct, as alleged herein, that violates the CLRA, the Song-Beverly Consumer Warranties Act, and other laws referenced herein.

2844925.1

314.    Plaintiffs and the California Class Members have suffered damages as a result of Generac's misconduct. Generac's unlawful, unfair, and fraudulent business acts and practices continue through the date of this filing.

315.    The above-described unfair, unlawful, and fraudulent business practices conducted by Generac present a threat and likelihood of harm and deception to members of the California Class and the public in that Generac has systematically perpetrated and continues to perpetrate the unfair, unlawful, and fraudulent conduct upon members of the public by engaging in the conduct described herein.

316.    Under the UCL, Plaintiffs and California Class Members request that Generac be enjoined from engaging in business practices that constitute a violation of the UCL and other acts prohibited by law. Plaintiffs and Class Members further request that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair practices, as provided for in California Business and Professions Code § 17203 and for such other relief as set forth herein.

**COUNT XI**
**VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT**
**CAL. CIV. CODE § 1750 *ET SEQ.***
**(On Behalf of Plaintiffs Locatell, Moon, Ward and the California Class)**

317.    Plaintiffs Locatell and Moon reallege and incorporate by reference the allegations contained in all preceding paragraphs as if fully set forth herein.

318.    Plaintiffs bring this claim on behalf of themselves and the California Class.

319.    Generac is a "person" within the meaning of California Civil Code §§ 1761(c) and 1770 and has provided "goods" within the meaning of California Civil Code §§ 1761(b) and 1770.

2844925.1

320. Plaintiffs and members of the California Class are "consumers" within the meaning of California Civil Code §§ 1761(d) and 1770 and have engaged in a "transaction" within the meaning of California Civil Code §§ 1761(e) and 1770.

321. Generac's acts and practices, which were intended to result, and which did result in the sale of Generac products to Plaintiffs and the California Class Members, violate § 1770 of the Consumers Legal Remedies Act in that:

    a.    Generac represents that its Systems have characteristics, uses, or benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

    b.    Generac represents that its Systems are of a particular standard, quality, or grade when they are not (Cal. Civ. Code § 1770(a)(7));

    c.    Generac advertises its goods with intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9)); and

    d.    Generac represents that its goods have been supplied in accordance with a previous representation when they have not (Cal. Civ. Code § 1770(a)(16)).

322. Generac knew, should have known, or was reckless in not knowing, that its Systems were defective and did not have the qualities and characteristics it represented, warranted, and advertised them to have.

323. Generac engaged in these unfair and deceptive acts or practices with the intent that they result, and which did result, in the sale of the subject Systems to Plaintiffs and California Class.

324. Generac's unfair and deceptive acts or practices occurred repeatedly in its course of trade or business, were material, capable of deceiving a substantial portion of the purchasing public and imposed a safety risk to Plaintiffs and the California Class Members.

325. Generac was under a duty to Plaintiffs and the California Class Members to disclose the deceptive and defective nature of its Systems in part because: the Defect in the Systems

2844925.1

presents a serious safety hazard and the Systems failed to produce consistent and dependable power generation; Generac was in a superior position to know and had exclusive knowledge of the true condition of its Systems; Plaintiff and the California Class Members could not reasonably have been expected to learn or discover that the Systems were defective; and Generac knew that Plaintiffs and the California Class Members could not reasonably have been expected to learn or discover the Defect in the Systems.

326.    As described above, in connection with the marketing and sale of its Systems to Plaintiffs and the California Class Members, Generac actively concealed and failed to disclose material information despite having knowledge the Defect described herein before Plaintiffs and the California Class Members purchased the Systems.

327.    The fact that consumers were entering into a sale or lease for Systems that were unsafe and failed to reliably operate properly is a material fact in that a reasonable person would have considered that an important factor in deciding whether to complete the transaction for the subject Systems. Plaintiffs would not have purchased the subject Systems had they known of that fact.

328.    As a direct and proximate result of Generac's violations of law, Plaintiffs and the California Class Members suffered injury in fact and lost money or property.

329.    Plaintiffs seek an order enjoining Generac from the unlawful practices described above and an Order requiring Generac to notify the California Class of its violations of the CLRA and the remedy it will provide to them.

330.    On December 28, 2022, and February 3, 2023, Plaintiffs Moon and Locatell, respectively, sent written notice by certified mail to Generac respecting the Defect of the Systems and a demand to remedy and cure the Defect and make them whole, which Generac failed to do.

Plaintiffs hereby also seek to hold Generac liable for all direct and consequential damages and losses incurred by them and the California Class as provided by laws and statute.

**COUNT XII**
**BREACH OF IMPLIED WARRANTIES**
**UNDER THE SONG-BEVERLY CONSUMER WARRANTY ACT**
**(On Behalf of Plaintiffs Locatell, Moon, Ward, and the California Class)**

331. Plaintiffs Locatell, Moon, and Ward reallege and incorporate by reference the allegations contained in all preceding paragraphs as if fully set forth herein.

332. Plaintiffs bring this claim on behalf of themselves and the California Class.

333. Generac Solar Products are "consumer goods" and Plaintiffs and California Class Members are "buyers" within the meaning of California Civil Code § 1791. Generac is also a "manufacturer" and "lessor" under California Civil Code § 1791.

334. Every sale or lease of consumer goods is accompanied by a manufacturer's implied warranty that the goods are merchantable within the meaning of California Civil Code § 1791.1(a).

335. Generac impliedly warranted to Plaintiffs and California Class Members that its Systems were "merchantable" within the meaning of California Civil Code §§ 1791 and 1792.

336. The implied warranty of merchantability included with each sale or lease of a Generac Systems means that Generac warranted that each item (a) would pass without objection in trade under the contract description; (b) was fit for the ordinary purposes for which the Systems would be used; and (c) conformed to Generac's promises or affirmations of fact.

337. This implied warranty included, *inter alia*, a warranty that the Systems manufactured, supplied, distributed, and/or sold by Generac were safe and reliable; and a warranty that the Systems would be fit for their intended use while the Systems were being used.

2844925.1

338.    Contrary to the applicable implied warranties, the Systems at the time of sale or lease and thereafter were defective and not fit for their ordinary and intended purpose in that they pose a safety risk and do not produce consistent and dependable solar energy.

339.    The Defect at the point of sale or lease exists without warning to Plaintiffs and California Class Members.

340.    Plaintiffs and California Class Members were intended third-party beneficiaries of the contracts for sale or lease of the Systems from Generac to its agents (e.g., installer/seller network) who ultimately sold the Systems to Plaintiff and Class Members. Generac, which manufacturers and markets the Systems, knew that Plaintiffs and the Class Members were end-users of the Solar Products, and brought itself into privity with Plaintiffs and the California Class Members who relied upon written representations made by Generac as alleged herein.

341.    Generac's actions have deprived Plaintiffs and the California Class Members of the benefit of their bargain and have caused the Systems to be worth less than what Plaintiffs and the Class Members paid.

342.    Any attempt by Generac to limit or disclaim the implied warranties in a manner that would exclude coverage of the Defect is unenforceable and void pursuant to California Civil Code §§ 1790.1, 1792.3, and 1793.

**COUNT XIII**
**BREACH OF EXPRESS WARRANTIES**
**UNDER THE SONG-BEVERLY CONSUMER WARRANTY ACT**
**(On Behalf of Plaintiffs Locatell, Moon, Ward, and the California Class)**

343.    Plaintiffs Locatell Moon, and Ward reallege and incorporate the preceding paragraphs as if fully set forth herein.

344.    Plaintiffs bring this claim on behalf of themselves, and the allegations contained in all California Class.

345.     The Systems are "consumer goods" under California Civil Code § 1791(a).

346.     Generac is and was at all relevant times a "manufacturer" of the Systems under California Civil Code § 1791(j); and, with respect to leases, is and was at all relevant times a "lessor" of Systems under California Civil Code § 1791(j).

347.     Plaintiffs and the California Class Members bought and leased the System(s) designed, manufactured, warranted, marketed to them, and intended to be purchased or leased by consumers such as them, by Generac.

348.     Generac expressly warranted the Systems against defects within the meaning of California Civil Code §§ 1791.2 and 1793.2.

349.     As described above, the Systems are defective. The Defect impairs the use, value, and safety of the Systems to reasonable consumers, Plaintiffs and Class Members.

350.     Generac knew of the Defect when it expressly warranted the Systems, wrongfully and fraudulently concealed material facts regarding the Defect, failed to inform Plaintiffs and California Class Members that the Systems were defective, and induced Plaintiffs and Class Members to purchase or lease the Systems under false and/or fraudulent pretenses.

351.     Generac is obligated, under the terms of its express warranties and pursuant to California Civil Code §§ 1793.2 and 1795.4 to repair and/or replace the defective Systems at no cost to Plaintiffs and the California Class Members.

352.     Generac breached its express warranties by supplying defective Systems to Plaintiffs and Class Members.

353.     Generac breached its express Systems Class Members, as a warranty replacement, a product that conforms to the qualities and characteristics that it promised when it sold the Systems to Plaintiffs and the California Class Members.

354. As detailed above, Generac was provided with appropriate notice and has been on notice of the Defect and of its breach of its express written warranties from various sources, including Plaintiffs.

355. Plaintiffs have given Generac a reasonable opportunity to cure its failures with respect to its warranties, and Generac has failed to do so.

356. Affording Generac any further opportunity to cure their breach of written warranties is unnecessary and futile here.

357. Any express warranties promising to repair and/or correct any defects fail in their essential purpose because the contractual remedy is insufficient to make Plaintiffs and California Class members whole and because Generac has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

358. Accordingly, recovery by Plaintiffs and the Class Members is not restricted to any written warranties promising to repair and/or correct defects, and they seek all remedies as allowed by law.

359. Any attempt by Generac to limit or disclaim the express warranties in a manner that would exclude coverage of the Defect is unenforceable and void pursuant to California Civil Code § 1790.1.

360. As a direct and proximate result of Generac's breach of its express warranties, Plaintiffs and the California Class Members received goods that have substantially impaired value and have suffered damages in an amount to be determined at trial.

361. Pursuant to California Civil Code §§ 1794 and 1795.4, Plaintiffs and California Class Members are entitled to incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees.

2844925.1

# GEORGIA

## COUNT XIV
### VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT
### O.C.G.A. § 10-1-370, *ET SEQ.*
**(On Behalf of Plaintiff Kibert Basler and the Georgia Class)**

362.     Plaintiff Kibert Basler hereby adopts and incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

363.     Plaintiff brings this claim on behalf of herself and the Georgia Class.

364.     Generac, Plaintiff Kibert Basler, and putative Georgia Class Members are "persons" within the meaning of Georgia's Uniform Deceptive Trade Practices Act ("Georgia UDTPA"). O.C.G.A. § 10-1-371(5).

365.     The Georgia UDTPA prohibits "deceptive trade practices" which include the "misrepresentation of standard, quality, or grade of goods and services," "engaging in any other conduct which similar creates a likelihood of confusing or misunderstanding," and representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, or benefits that they do not have," and "[a]dvertising goods or services with intent not to sell them as advertised." O.C.G.A. § 10-1-372.

366.     By misrepresenting that the Systems safely and reliably manage electricity and otherwise failing to disclose the nature of the Defect in the Systems to Plaintiff Kibert Basler and putative Georgia Class Members, Generac engaged in deceptive trade practices in violation of the Georgia UDTPA, because Generac represented that the Systems had characteristics and benefits that they do not have, and represented that the Systems were of a particular standard, quality, or grade when they were of another. *See* O.C.G.A. §§ 10-1-372(5), (7), (9).

2844925.1

367.     Generac advertised the Systems as capable of safe and reliable electricity management with the intent not to sell it as advertised given its knowledge it was not so, in violation of O.C.G.A. § 10-1-372.

368.     Generac's unfair and deceptive acts or practices occurred repeatedly in Generac's course of trade or business, were material, were capable of deceiving a substantial portion of the purchasing public, and as a result, caused economic harm to owners and purchasers of the Systems.

369.     Generac knew by July 2020 at the latest that the Systems suffered from the Defect, were not safely and reliably able to manage electricity, and were not suitable for their intended use.

370.     Generac had exclusive knowledge of material facts concerning the Defect in the Systems and that the Systems were not able to safely and reliably manage electricity. However, Generac actively concealed the Defect from consumers by denying the existence of the Defect to consumers complaining about the Defect and continuing to represent the Systems as suitable for their intended use.

371.     Generac was under a duty to Plaintiff Kibert Basler and putative Georgia Class Members to disclose the defective nature of the Systems because, *inter alia*:

   a.     Generac was in a superior position to know the true state of facts about the Defect and were not able to safely and reliably manage electricity; and

   b.     Plaintiff Kibert Basler and putative Georgia Class Members could not reasonably have been expected to learn or discover that the Systems had the Defect and were not able to safely and reliably manage electricity at the time of purchase (and before damage occurred to the Systems).

372.     Despite possessing information to the contrary, Generac misrepresented the Systems as able to safely and reliably manage electricity and otherwise failed to disclose and actively concealed the Defect while continuing to market and sell the Systems.

2844925.1

373. Generac knew or should have known that its conduct violated the Georgia UDTPA.

374. In misrepresenting the Systems as able to safely and reliably manage electricity, failing to disclose the Defect, and denying and misleading consumers as to the Defect and quality of the Systems, Generac knowingly and intentionally concealed material facts and breached its duty not to do so.

375. The facts Generac misrepresented to and concealed from Plaintiff Kibert Basler and putative Georgia Class Members were material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Systems. Moreover, a reasonable consumer would consider the Defect and lack of capability to safely and reliably manage electricity to be an undesirable quality, as Plaintiff Kibert Basler and putative Georgia Class Members did. Had Plaintiff Kibert Basler and putative Georgia Class Members known that the Systems contained the Defect, they would not have purchased the Systems, or would have paid less for them.

376. As a result of Generac's misconduct, Plaintiff Kibert Basler and putative Georgia Class Members have been harmed and suffered actual damages in that the Systems have a serious safety Defect which risks personal injury and damage to property.

377. As a direct and proximate result of Generac's unfair or deceptive acts or practices, Plaintiff Kibert Basler and putative Georgia Class Members have suffered and will continue to suffer actual damages.

378. Generac's violation presents a continuing risk to Plaintiff Kibert Basler, putative Georgia Class Members, and the general public, as it continues to make representations that the Systems are able to safely and reliably manage electricity and continues to replace defective Snap

2844925.1

components with more defective components under the Limited Warranty. Generac's unlawful acts and practices complained of herein affect the public interest.

379.     Generac had received timely notice of violations of O.C.G.A. § 10-1-370, *et seq.*, far in advance of this litigation via countless consumer complaints.

380.     Notwithstanding adequate and ample notice from Georgia consumers, without admitting the System contains the Defect, Generac acknowledged the need for new Snap models to be installed as of June 2022.

381.     As a direct and proximate result of Generac's violations of the Georgia UDTPA, Plaintiff Kibert Basler and putative Georgia Class Members have suffered injury-in-fact and/or actual damage. Had they been aware of the Defect in the Systems, Plaintiff Kibert Basler and putative Georgia Class Members either would have paid less for their Systems or would not have purchased them at all, or would have negotiated different terms of the warranty. Plaintiff Kibert Basler and putative Georgia Class Members did not receive the benefit of their bargain as a result of Generac's misconduct.

382.     Plaintiff Kibert Basler and putative Georgia Class Members seek an order enjoining Generac's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia UDTPA and applicable law.

## COUNT XV
### VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT
### GA. CODE ANN. § 10-1-390 *ET SEQ.*
### (On Behalf of Plaintiff Kibert Basler and the Georgia Class)

383.     Plaintiff Kibert Basler hereby realleges and incorporates by reference the allegations contained in all preceding paragraphs as though set forth herein.

384.     Plaintiff brings this claim on behalf of herself and the Georgia Class.

2844925.1

385.    The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, Ga. Code. Ann. § 10-1-393(a), including, but not limited to, "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised." Ga. Code. Ann. § 10-1-393(b).

386.    Plaintiff and Georgia Class Members are "consumers" within the meaning of Ga. Code Ann. § 10-1-393(b).

387.    At all relevant times, Generac engaged in "trade or commerce" within the meaning of Ga. Code Ann. § 10-1-393(b).

388.    Generac participated in unfair and deceptive trade practices that violated the Georgia FBPA as described herein. In the course of Generac's business, it willfully failed to disclose and systematically and actively concealed the Defect. Accordingly, Generac engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Systems.

389.    In purchasing or leasing the Systems, Plaintiff and the Georgia Class Members were deceived by Generac's failure to disclose the Defect and by its affirmative misrepresentations about the Systems, as alleged above. As alleged herein, Generac's method of deception was sophisticated.

2844925.1

390. Generac's unfair or deceptive acts or practices, fraud, misrepresentations, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

391. Generac intentionally and knowingly misrepresented material facts regarding the Systems with intent to mislead Plaintiffs and the Georgia Class.

392. Generac knew or should have known that its conduct violated the Georgia FBPA.

393. Generac owed Plaintiff and the Georgia Class Members a duty to disclose the truth about the Charging Defect because Generac:

   a.   Possessed exclusive knowledge of the design of the Systems and how they worked;

   b.   Intentionally concealed the Defect from Plaintiffs and the Georgia Class; and/or

   c.   Made incomplete representations regarding the Systems capability, reliability, functioning and safety.

394. Due to Generac's specific and superior knowledge of their false representations regarding the Systems, as alleged above, and Plaintiff'' and other Georgia Class Members' reliance on these material representations, Generac had a duty to disclose the existence of the Defect and the limitations of the Systems, to Plaintiff and Georgia Class Members. Having volunteered to provide information to Plaintiff and the Georgia Class Members, Generac had a duty to disclose the entire truth. These omitted and concealed facts were material because they directly impact the value of the Systems purchased or leased by Plaintiff and Georgia Class Members. Plaintiff and Georgia Class Members reasonably relied upon Generac's false misrepresentations, and had no way of knowing that Generac's representations to consumers were false.

395. Plaintiff and the Georgia Class Members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Generac's conduct in that Plaintiff

and the Georgia Class Members overpaid for their Systems and did not receive the benefit of their bargain, and their Systems have suffered a diminution in value. They also incurred additional energy costs. These injuries are the direct and natural consequence of Generac's misrepresentations, fraud, deceptive practices, and omissions.

396.    Generac' violations present a continuing risk to Plaintiff as well as to the general public. Generac's unlawful and deceptive acts and practices complained of herein impact the public interest. Specifically: (1) the number of consumers affected by Generac's deceptive practices are in the tens of thousands nation-wide; (2) Generac has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Systems to Plaintiff and individual Georgia Class Members; and (3) so long as the Systems continue to be sold with the Defect, the likelihood of continued impact on other consumers is significant.

397.    On November 21, 2022, counsel for Plaintiff Kibert Basler sent a letter to Generac with notice of its allegations regarding Generac's violations of the Georgia FBPA relating to the System and the Georgia Class Members' demand that Generac correct or agree to correct the actions described therein, in accordance with Ga. Code Ann. § 10-1-399(b). Generac failed to do so within the statutory prescribed time period and Plaintiff hereby seeks compensatory and monetary damages to which Plaintiff and the Georgia Class Members are entitled.

## ILLINOIS

## COUNT XVI
### VIOLATION OF ILLINOIS' UNIFORM DECEPTIVE TRADE PRACTICES ACT
### 815 ILCS §§ 510/2, *ET SEQ.*
### (On Behalf of Plaintiffs Bettorf, Poston, and the Illinois Class)

398.    Plaintiffs Bettorf and Poston reallege and incorporate by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

399.    Plaintiffs bring this claim on behalf of themselves and the Illinois Class.

2844925.1

400. Generac is a "person" as defined by 815 Ill. Comp. Stat. §§ 510/1(5).

401. Generac engaged in deceptive trade practices in the conduct of its business, in violation of 815 Ill. Comp. Stat. §§ 510/2(a), including:

    a.    Representing that goods or services have characteristics that they do not have;

    b.    Representing that goods or services are of a particular standard, quality, or grade if they are of another;

    c.    Advertising goods or services with intent not to sell them as advertised; and

    d.    Engaging in other conduct that creates a likelihood of confusion or misunderstanding.

402. Generac's deceptive trade practices include:

    a.    Having extensive knowledge of the defective nature of the Systems and failing to disclose to Plaintiff and Illinois Class Members;

    b.    Representing the Systems as capable of safe and reliable power generation and management of electricity when they were not due to the Defect;

    c.    Conveying a warranty with the sale of its Systems when it does not intend to honor the warranty by replacing the defective Systems with non-defective Systems;

    d.    In failing to disclose to Plaintiff and Illinois Class Members that the Systems:

        i.    were defective;
        ii.    were not able to safely and reliably generate power and manage electricity;
        iii.    were not able to reliably manage electricity;
        iv.    would prematurely fail;
        v.    cannot be expected to fulfill their expected service life; and
        vi.    would pose a safety hazard to individuals and their property once the Defect manifests.

403. Generac's representations and omissions were material because they were likely to lead reasonable consumers to believe that they were purchasing and using Systems which were

free of defects; were safely and reliably capable of managing electricity; of high quality; would not prematurely fail; were not a safety hazard; and came with a warranty that Generac would honor.

404. The above unfair and deceptive practices and acts by Generac were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiffs and Illinois Class Members that they could not reasonably avoid, and this substantial injury outweighed any benefits to consumers or to competition.

405. As a direct and proximate result of Generac's unfair, unlawful, and deceptive acts and practices, Plaintiffs and Illinois Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non- monetary damages, including that the perpetration of further deception by Generac. Had they been aware of the Defect in the Systems, Plaintiffs and Illinois Class Members either would have paid less for their Systems or would not have purchased them at all, or would have negotiated different terms of the warranty. Plaintiffs and Illinois Class Members did not receive the benefit of their bargain as a result of Generac's misconduct.

## <u>COUNT XVII</u>
### VIOLATION OF ILLINOIS' CONSUMER FRAUD ACT
### 815 ILCS §§ 505, *ET SEQ.*
### (On Behalf of Plaintiffs Bettorf, Poston, and the Illinois Class)

406. Plaintiffs Bettorf and Poston reallege and incorporate by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

407. Plaintiffs bring this claim on behalf of themselves and the Illinois Class.

408. Generac is a "person" as defined by 815 Ill. Comp. Stat. §§ 505/1(c).

409. Plaintiffs and Illinois Class Members are "consumers" as defined by 815 Ill. Comp. Stat. §§ 505/1(e).

410.     Generac's conduct as described herein was in the conduct of "trade" or "commerce" as defined by 815 Ill. Comp. Stat. § 505/1(f).

411.     Generac's deceptive, unfair, and unlawful trade acts or practices, in violation of 815 Ill. Comp. Stat. § 505/2, include:

a.     Having extensive knowledge of the defective nature of the Systems and failing to disclose to Plaintiff and Illinois Class Members;

b.     Representing the Systems as capable of safe and reliable power generation and management of electricity when they were not due to the Defect;

c.     Conveying a warranty with the sale of its Systems when it does not intend to honor the warranty by replacing the defective Systems with non-defective Systems;

d.     In failing to disclose to Plaintiff and Illinois Class Members that the Systems:

i.     were defective;
ii.    were not able to safely manage electricity;
iii.   were not able to reliably manage electricity;
iv.    would prematurely fail;
v.     cannot be expected to fulfill their expected service life; and
vi.    would pose a safety hazard to individuals and their property once the Defect manifests.

412.     Generac's representations and omissions were material because they were likely to lead reasonable consumers to believe that they were purchasing and using Systems which were free of defects; were safely and reliably capable of power generation and managing electricity; of high quality; would not prematurely fail; were not a safety hazard; and came with a warranty that Generac would honor.

413.     Generac intended to mislead Plaintiff and Illinois Class Members and induce them to rely on its misrepresentations and omissions.

414.     The above unfair and deceptive practices and acts by Generac offend public policy, and were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury

that these consumers could not reasonably avoid, and this substantial injury outweighed any benefits to consumers or to competition.

415.    Generac acted intentionally, knowingly, and maliciously to violate Illinois's Consumer Fraud Act, and recklessly disregarded Plaintiff's and Illinois Class Members' rights.

416.    As a direct and proximate result of Generac's unfair, unlawful, and deceptive acts and practices, Plaintiffs and Illinois Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non- monetary damages, including the perpetration of further deception by Generac. Had they been aware of the Defect in the Systems, Plaintiffs and Illinois Class Members either would have paid less for their Systems or would not have purchased them at all, or would have negotiated different terms of the warranty. Plaintiffs and Illinois Class Members did not receive the benefit of their bargain as a result of Generac's misconduct.

## INDIANA

## COUNT XVIII
### VIOLATION OF INDIANA'S DECEPTIVE CONSUMER SALES ACT
### IND. CODE §§ 24-5-0.5-1, *ET SEQ.*
### (On Behalf of Plaintiff Lauder and the Indiana Class)

417.    Plaintiff Lauder realleges and incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

418.    Plaintiff brings this claim on behalf of himself and the Indiana Class.

419.    Generac is a "person" as defined by Ind. Code § 24-5-0.5-2(a)(2).

420.    Generac is a "supplier" as defined by Ind. Code § 24-5-0.5-2(a)(1), because it regularly engages in or solicits "consumer transactions," within the meaning of Ind. Code § 24-5-0.5-2(a)(3)(A).

2844925.1

421. Generac engaged in unfair, abusive, and deceptive acts, omissions, and practices in connection with consumer transactions, in violation of Ind. Code § 24-5-0.5-3(a).

422. Generac's representations and omissions include both implicit and explicit representations.

423. Generac's unfair, abusive, and deceptive acts, omissions, and practices include:

    a.    Having extensive knowledge of the defective nature of the Systems and failing to disclose to Plaintiff and Indiana Class Members;

    b.    Representing the Systems as capable of safe and reliable power generation and management of electricity when they were not due to the Defect;

    c.    Conveying a warranty with the sale of its Systems when it does not intend to honor the warranty by replacing the defective Systems with non-defective Systems;

    d.    In failing to disclose to Plaintiff and Indiana Class Members that the Systems:

        i.    were defective;
        ii.    were not able to safely and reliably generate power and manage electricity;
        iii.    would prematurely fail;
        iv.    cannot be expected to fulfill their expected service life; and
        v.    would pose a safety hazard to individuals and their property once the Defect manifests.

    e.    Failing to comply with common law and statutory duties pertaining to the manufacture of Generac's Systems, including the Indiana Deceptive Consumer Sales Act as well as other states' consumer protection statutes, which was a direct and proximate cause of the injury suffered due to the Defect;

    f.    Misrepresenting that it would comply with common law and statutory duties pertaining to the manufacture of Generac's Systems, including duties imposed by the Indiana Deceptive Consumer Sales Act as well as other states' consumer protection statutes;

    g.    Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the manufacture of Generac's Systems, including duties imposed by the Indiana Deceptive Consumer Sales Act as well as other states' consumer protection statutes;

2844925.1

and

h.      Failing to timely and adequately notify Plaintiff and putative Indiana Class Members of the Defect.

424.    Generac's acts and practices were "unfair" because they caused or were likely to cause substantial injury to consumers which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

425.    Generac's representations and omissions were material because they were likely to lead reasonable consumers to believe that they were purchasing and using Systems which were free of defects; were safely and reliably capable of power generation and managing electricity; of high quality; would not prematurely fail; were not a safety hazard; and came with a warranty that Generac would honor.

426.    The injury to consumers from Generac's conduct was and is substantial because it was non-trivial and non-speculative; and involved a large monetary injury and a safety risk to consumers. The injury to consumers was substantial not only because it inflicted harm on a significant and unprecedented number of consumers, but also because it inflicted a significant amount of harm on each consumer.

427.    Consumers could not have reasonably avoided injury because Generac's business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making. By withholding important information from consumers about the Defect, Generac created an asymmetry of information between it and consumers that precluded consumers from taking action to avoid or mitigate injury.

428.    The Defect had no countervailing benefit to consumers or to competition.

429.    Generac's acts and practices were "abusive" for numerous reasons, including:

a.      Because they materially interfered with consumers' ability to understand a

term or condition in a consumer transaction. Generac's failure to disclose the Defect interfered with consumers' decision-making in a variety of their transactions;

b.     Because they took unreasonable advantage of consumers' lack of understanding about the material risks, costs, or conditions of a consumer transaction. Without knowing about the Defect, consumers lacked an understanding of the material risks and costs with regard to their transactions;

c.     Because they took unreasonable advantage of consumers' inability to protect their own interests. Consumers could not protect their interests due to the asymmetry in information between them and Generac concerning the Defect; and

d.     Because Generac took unreasonable advantage of consumers' reasonable reliance that it was acting in their interests to manufacture a product free from Defect and as represented. Consumers' reliance was reasonable for the reasons discussed below.

430.     Generac also engaged in "deceptive" acts and practices in violation of Indiana Code § 24-5-0.5-3(a) and § 24-5-0.5-3(b), including:

a.     Misrepresenting that the subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have;

b.     Misrepresenting that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not;

c.     Misrepresenting that the subject of a consumer transaction will be supplied to the public in greater quantity (i.e., more data security) than the supplier intends or reasonably expects; and

d.     Omitting from its representations and warranties that the System contains the Defect to which Generac has no remedy.

431.     Generac intended to mislead Plaintiff and Indiana Class Members and induce them to rely on its misrepresentations and omissions.

2844925.1

432. Generac's representations and omissions were material because they were likely to deceive reasonable consumers about the System and the presence of the Defect.

433. Generac's representations and omissions were material because they were likely to deceive reasonable consumers, including Plaintiff and Indiana Class Members, that their Systems would be defect-free at the time of purchase.

434. Had Generac disclosed the Defect to Plaintiff and Indiana Class Members, Generac would have been unable to continue in business and it would have been forced to create a defect-free System and comply with the law. Instead, Generac manufactured the Systems and profited significantly as a result. Accordingly, because Generac held itself out as manufacturing a defect-free Systems Plaintiff and Indiana Class Members acted reasonably in relying on Generac's misrepresentations and omissions, the truth of which they could not have discovered.

435. Generac had a duty to disclose the above-described facts under the circumstances. This duty arose because Generac represented the System as having certain qualities to the general public, including Plaintiff and Indiana Class Members, warranted those representations, and profited because of those representations, warranties, and omissions to the contrary. Accordingly, because Generac represented and warranted the System as such, Plaintiff and Indiana Class Members acted reasonably in relying on Generac's misrepresentations and omissions, the truth of which they could not have discovered. In addition, such a duty is implied by law due to the nature of the relationship between consumers—including Plaintiff and Indiana Class Members—and Generac, because consumers are unable to know at the time of purchase whether the System contains the Defect, and therefore was required to place trust and confidence in Generac. Generac's duty to disclose also arose from its:

    a.    Possession of exclusive knowledge regarding the Defect;

2844925.1

b.    Active concealment of the Defect; and/or

c.    Incomplete representations about the quality of the Systems, while purposefully withholding material facts from Plaintiff and Indiana Class Members that contradicted these representations.

436.    Generac acted intentionally, knowingly, and maliciously to violate Indiana's Deceptive Consumer Sales Act, and recklessly disregarded Plaintiff and Indiana Class Members' rights. Generac's actions were not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing.

437.    Generac had notice of these claims at least as of November 21, 2022, when Plaintiff Lauder sent written notice to Generac demanding corrective actions for the unfair or deceptive acts described *supra*. Plaintiff Lauder also provided notice of his claims as of the date of this filing by way of this Class Action Complaint. Generac had further notice of Plaintiffs claims due to its monitoring of Plaintiffs and Indiana Class Members' Systems via their applications and connection to the Internet. Notwithstanding Plaintiff's provision of notice, any such notice is futile as there is no non-defective replacement component to cure the Defect alleged herein.

438.    Generac's conduct includes incurable deceptive acts that Generac engaged in as part of a scheme, artifice, or device with intent to defraud or mislead, under Ind. Code § 24-5-0.5-2(a)(8).

439.    As a direct and proximate result of Generac' uncured or incurable unfair, abusive, and deceptive acts or practices, Plaintiff and Indiana Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages. Had they been aware of the Defect in the Systems, Plaintiff and Indiana Class Members either would have paid less for their Systems or would not have purchased them at all,

or would have negotiated different terms of the warranty. Plaintiff and the Indiana Class Members did not receive the benefit of their bargain as a result of Generac's misconduct.

440.    Generac's violations present a continuing risk to Plaintiff and the Indiana Class Members as well as to the general public.

## MICHIGAN

## COUNT XIX
### VIOLATION OF MICHIGAN'S CONSUMER PROTECTION ACT
### MICH. COMP. LAWS. ANN. §§ 445.903, *ET SEQ.*
### (On Behalf of Plaintiffs Cartmell, Plichta, Richardson, Slusher, and the Michigan Class)

441.    Plaintiffs Cartmell, Plichta, Slusher, and Richardson reallege and incorporate by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

442.    Plaintiffs bring this claim on behalf of themselves and the Michigan Class.

443.    Plaintiffs, the Michigan Class Members, and Generac are "persons" as defined by Mich. Comp. Laws Ann. § 445.903(d).

444.    Generac advertised, offered, or sold goods or services in Michigan and engaged in trade or commerce directly or indirectly affecting the people of Michigan, as defined by Mich. Comp. Laws Ann. § 445.903(g).

445.    Generac engaged in unfair, unconscionable, and deceptive practices in the conduct of trade and commerce, in violation of Mich. Comp. Laws Ann. § 445.903(1), including:

      a.    Representing that its goods and services have characteristics, uses, and benefits that they do not have, in violation of Mich. Comp. Laws Ann. § 445.903(1)(c);

      b.    Representing that its goods and services are of a particular standard or quality if they are of another in violation of Mich. Comp. Laws Ann. § 445.903(1)(e);

      c.    Making a representation or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is, in violation of Mich. Comp. Laws Ann. § 445.903(1)(bb); and

d.   Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive matter, in violation of Mich. Comp. Laws Ann. § 445.903(1)(cc).

446.   Generac's unfair, unconscionable, and deceptive practices include:

a.   Having extensive knowledge of the defective nature of the Systems which it failed to disclose to Plaintiffs and Michigan Class Members;

b.   Representing the Systems as capable of safe and reliable power generation and electricity management when they were not due to the Defect;

c.   Conveying a warranty with the sale of its Systems when it does not intend to honor the warranty by replacing the defective Systems with non-defective Systems;

d.   Failing to disclose to Plaintiffs and Michigan Class Members that the Systems:

   i.   were defective;
   ii.   were not able to safely or reliably power generation and manage electricity;
   iii.   would prematurely fail;
   iv.   cannot be expected to fulfill their expected service life; and
   v.   would pose a safety hazard to individuals and their property once the Defect manifests.

447.   Generac's representations and omissions were material because they were likely to lead reasonable consumers to believe that they were purchasing and using Systems which were free of defects; were safely and reliably capable of managing power generation; of high quality; would not prematurely fail; were not a safety hazard; and came with a warranty that Generac would honor.

448.   Generac intended to mislead Plaintiffs and Michigan Class Members and induce them to rely on its misrepresentations and omissions.

449.   Generac acted intentionally, knowingly, and maliciously to violate Michigan's Consumer Protection Act, and recklessly disregarded Plaintiffs' and Michigan Class Members' rights.

2844925.1

450. As a direct and proximate result of Generac's unfair, unconscionable, and deceptive practices, Plaintiffs and Michigan Class Members, have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages. Had they been aware of the Defect in the Systems, Plaintiffs and Michigan Class Members either would have paid less for their Systems or would not have purchased them at all, or would have negotiated different terms of the warranty. Plaintiffs and Michigan Class Members did not receive the benefit of their bargain as a result of Generac's misconduct.

451. Plaintiffs and Michigan Class Members seek all monetary and non-monetary relief allowed by law, including the greater of actual damages or $250 for each act in violation of § 44.903(1), *et seq.*, injunctive relief, and any other relief that is just and proper.

## MISSOURI

### COUNT XX
**VIOLATION OF MISSOURI'S MERCHANDISE PRACTICES ACT**
**MO. REV. §§ 407.010, *ET SEQ.***
**(On Behalf of Plaintiffs Slater, Vincent, and the Missouri Class)**

452. Plaintiffs Slater and Vincent reallege and incorporate by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

453. Plaintiffs bring this claim on behalf of themselves and the Missouri Class.

454. Generac is a "person" as defined by Mo. Rev. Stat. § 407.010(5).

455. Generac advertised, offered, or sold goods or services in Missouri and engaged in trade or commerce directly or indirectly affecting the people of Missouri, as defined by Mo. Rev. Stat. § 407.010(4), (6) and (7).

456. Plaintiffs and Missouri Class Members purchased or leased goods or services primarily for personal, family, or household purposes.

457. Generac engaged in unlawful, unfair, and deceptive acts and practices, in connection with the sale or advertisement of merchandise in trade or commerce, in violation of Mo. Rev. Stat. § 407.020(1), including:

    a.    Having extensive knowledge of the defective nature of the Systems which it failed to disclose to Plaintiffs and Missouri Class Members;

    b.    Representing the Systems as capable of safe and reliable power generation and electricity management when they were not due to the Defect;

    c.    Conveying a warranty with the sale of its Systems when it does not intend to honor the warranty by replacing the defective Systems with non-defective Systems;

    d.    In failing to disclose to Plaintiffs and Missouri Class Members that the Systems:

        i.    were defective;
        ii.    were not able to safely and reliably provide and power generation and manage electricity;
        iii.    would prematurely fail;
        iv.    cannot be expected to fulfill their expected service life; and
        v.    would pose a safety hazard to individuals and their property once the Defect manifests.

    e.    Failing to comply with common law and statutory duties pertaining to the manufacture of Generac's Systems, including the Missouri Merchandise Practices Act, as well as other states' consumer protection statutes, which was a direct and proximate cause of the injury suffered due to the Defect;

    f.    Misrepresenting that it would comply with common law and statutory duties pertaining to the manufacture of Generac's Systems, including duties imposed by the Missouri Merchandise Practices Act, as well as other states' consumer protection statutes;

    g.    Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the manufacture of Generac's Systems, including duties imposed by the Missouri Merchandise Practices Act, as well as other states' consumer protection statutes; and

    h.    Failing to timely and adequately notify Plaintiffs and Missouri Class Members of the Defect.

2844925.1

458.     Generac's representations and omissions were material because they were likely to lead reasonable consumers to believe that they were purchasing and using Systems which were free of defects; were safely and reliably capable of functioning and managing power generation; were of high quality; would not prematurely fail; were not a safety hazard; and came with a warranty that Generac would honor.

459.     Generac intended to mislead Plaintiffs and Missouri Class Members and induce them to rely on its misrepresentations and omissions.

460.     Generac acted intentionally, knowingly, and maliciously to violate Missouri's Merchandise Practices Act, and recklessly disregarded Plaintiffs and Missouri Class Members' rights.

461.     As a direct and proximate result of Generac's unlawful, unfair, and deceptive acts and practices, Plaintiffs and Missouri Class Members, have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages. Had they been aware of the Defect in the Systems, Plaintiffs and Missouri Class Members, either would have paid less for their Systems or would not have purchased them at all, or would have negotiated different terms of the warranty. Plaintiffs and Missouri Class Members did not receive the benefit of their bargain as a result of Generac's misconduct.

## NEW YORK

### COUNT XXI
### VIOLATIONS OF NEW YORK'S GEN. BUS. LAW § 349
**(On Behalf of Plaintiff Stevenson and the New York Class)**

462.     Plaintiff Stevenson incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

463.     Plaintiff Stevenson brings this claim on behalf of herself and the New York Class Members.

2844925.1

464. Plaintiff is a "person" within the meaning of New York General Business Law ("New York GBL"). N.Y., Gen. Bus. Law § 349(h).

465. Generac is a "person," "firm," "corporation," or "association" within the meaning of N.Y. Gen. Bus. Law § 349.

466. New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349. Defendants' conduct, as described in this Complaint, constitutes "deceptive acts or practices" within the meaning of the New York GBL. All of Generac's deceptive acts and practices, which were intended to mislead consumers in a material way in the process of purchasing or leasing the Systems, constitute conduct directed at consumers and is "consumer-oriented" conduct. Further, Plaintiff and other the New York Class Members suffered injury as a result of the deceptive acts or practice.

467. Generac's actions, as set forth above, occurred in the conduct of business, trade, or commerce.

468. In the course of Generac's business, Generac willfully failed to disclose and systematically and actively concealed the Defect. Particularly in light of Generac's advertising and sales marketing, a reasonable consumer, acting reasonably, would expect the Systems to function reliably and safely for power generation. Accordingly, Generac engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the System.

469. In purchasing or leasing the Systems, Plaintiff and the New York Class Members were deceived by Generac's failure to disclose the Defect and by Generac's affirmative misrepresentations about the Systems.

470. Plaintiff and the New York Class Members had no way of knowing that Generac's representations were false and gravely misleading. As alleged herein, Generac engaged in extremely sophisticated methods of deception.

471. Generac's unfair or deceptive acts or practices, fraud, misrepresentations, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers such as Plaintiff and the New York Class Members.

472. Generac intentionally and knowingly misrepresented material facts regarding the System with intent to mislead Plaintiff and the New York Class.

473. Generac knew or should have known that its conduct violated the New York GBL § 349.

474. Generac owed Plaintiff and the New York Class a duty to disclose the truth about the Defect because Generac:

      a.    Possessed exclusive knowledge of the design of the System and how it performed;

      b.    Intentionally concealed Defect from Plaintiff and the New York Class; and/or

      c.    Made incomplete representations regarding the performance and capability of the Systems.

475. Due to Generac's specific and superior knowledge of the Defects and its false representations regarding the performance and capability of the Systems, Generac had a duty to disclose the existence of the Defect and the limitations of the Systems to Plaintiff and Class Members. Having volunteered to provide information to Plaintiff and the New York Class

Members, Generac had a duty to disclose the entire truth. These omitted and concealed facts were material because they directly impact the value of the Systems purchased or leased by Plaintiff and the New York Class Members.

476.    Plaintiff and the New York Class Members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Generac's conduct in that they overpaid for their Systems and did not receive the benefit of their bargain, and their Systems have suffered a diminution in value and/or are less valuable than what was paid for them. They also incurred additional and consequential energy costs due to the Defect. These injuries are the direct and natural consequence of Generac's misrepresentations, fraud, deceptive practices, and omissions.

477.    Generac's violations present a continuing risk to Plaintiff as well as to the general public. Generac's unlawful and deceptive acts and practices complained of herein impact the public interest. Specifically: (1) the number of consumers affected by Generac's deceptive practices are in the tens of thousands nation-wide; (2) Generac has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Systems to Plaintiff and individual New York Class Members; and (3) so long as the Systems continue to be sold with the Defect, the likelihood of continued impact on other consumers is significant.

478.    Pursuant to N.Y. Gen. Bus. Law § 349(h), Plaintiff and each individual New York Class Member seek actual damages or $50, whichever is greater, in addition to three times each of their actual damages up to $1,000 apiece, for each and every one of Generac's willful and knowing violation of N.Y. Gen. Bus. Law § 349. Plaintiff and New York Class Members also seek attorneys' fees, an order enjoining Generac's deceptive conduct, and any other just and proper relief available under the New York GBL.

## COUNT XXII
## VIOLATIONS OF NEW YORK'S GEN. BUS. LAW § 350
### (On Behalf of Plaintiff Stevenson and the New York Class)

479.     Plaintiff Stevenson realleges and incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

480.     Plaintiff Stevenson brings this Count on behalf of herself and the New York Class Members.

481.     New York's General Business Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce[.]" False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity." N.Y. Gen. Bus. Law § 350-a.

482.     Generac caused to be made or disseminated throughout New York, through advertising, marketing, and other publications, representations that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Generac, to be untrue and misleading to consumers, including Plaintiff and the New York Class Members.

483.     Defendants have violated N.Y. Gen. Bus. Law § 350 because of the misrepresentations and omissions alleged herein, including, but not limited to, Generac's failure to disclose the Defect, as alleged heretofore.

484.     In purchasing or leasing the System, Plaintiff and the New York Class Members were deceived by Generac's failure to disclose the Defect and by Generac's affirmative misrepresentations about the System.

485.     Plaintiff and New York Class Members had no way of knowing that Generac's representations were false and gravely misleading. As alleged herein, Generac engaged in extremely sophisticated methods of deception.

486.     Generac's unfair or deceptive acts or practices, fraud, misrepresentations, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

487.     Generac intentionally and knowingly misrepresented material facts regarding the System with intent to mislead Plaintiff and the New York Class.

488.     Defendants knew or should have known that its conduct violated the New York GBL § 350.

489.     Generac owed Plaintiff and the New York Class Members a duty to disclose the truth about the Defect because Generac:

        a.      Possessed exclusive knowledge of the design and/or manufacturing flaws (Defect) of the System and how the Systems worked and performed, and its true capabilities;

        b.      Intentionally concealed the Defect from Plaintiff and the New York Class; and/or

        c.      Made incomplete representations regarding the Systems safety, performance and functional reliability.

490.     Due to Defendants' specific and superior knowledge of the Defect and its false representations regarding the Systems, Generac had a duty to disclose the existence of the Defect, and the limitations and performance unreliability and related infirmities of the Systems, to Plaintiff and New York Class Members. Having volunteered to provide information to Plaintiff and the New York Class Members, Generac had a duty to disclose not just the partial truth, but the entire

truth. These omitted and concealed facts were material because they directly impact the value of the Systems purchased or leased by Plaintiff and New York Class Members.

491.    Plaintiff and the New York Class Members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Generac's conduct in that they overpaid for their Systems and did not receive the benefit of their bargain, and their Systems have suffered a diminution in value and/or are less valuable than what was paid for them. They also incurred additional energy costs due to the Defect. These injuries are the direct and natural consequence of Generac's misrepresentations, fraud, deceptive practices, and omissions.

492.    Generac's violations present a continuing risk to Plaintiff as well as to the general public. Generac's unlawful and deceptive acts and practices complained of herein impact the public interest. Specifically: (1) the number of consumers affected by Generac's deceptive practices are in the tens of thousands nation-wide; (2) Generac has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Systems to Plaintiff and the individual New York Class Members; and (3) so long as the Systems continue to be sold with the Defect, the likelihood of continued impact on other consumers is significant.

493.    Plaintiff and the New York Class Members are each entitled to recover their actual damages or $500, whichever is greater. Because Generac acted willfully or knowingly, Plaintiff and the New York Class Members are each entitled to recover three times their actual damages, up to $10,000 each.

# NORTH CAROLINA

## COUNT XXIII
### VIOLATION OF NORTH CAROLINA'S UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAWS
### N.C. GEN. STAT. § 75-1.1, *ET SEQ.*
#### (On Behalf of Plaintiffs Baltimore, Cothren, and the North Carolina Class)

494. Plaintiffs Baltimore and Cothren hereby reallege and incorporate by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

495. Plaintiffs bring this claim on behalf of themselves and the North Carolina Class.

496. N.C. Gen. Stat. § 75-1.1 makes unlawful, "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."

497. By designing, manufacturing, supplying, distributing, and/or selling the Systems throughout the State of North Carolina and making representations regarding the Systems, Generac has affected commerce and trade within the State. Generac engaged in unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, including:

    a. Having extensive knowledge of the defective nature of the Systems and failing to disclose the Defect to Plaintiffs and North Carolina Class Members;

    b. Representing the Systems as capable of safe and reliable power generation and management of electricity when they were not due to the Defect;

    c. Conveying a warranty with the sale of its Systems when it does not intend to honor the warranty by replacing the defective Systems with non-defective Systems;

    d. In failing to disclose to Plaintiffs and North Carolina Class Members that the Systems:

        i. were defective;
        ii. were not able to safely and reliably generate power and manage electricity;
        iii. would prematurely fail;
        iv. cannot be expected to fulfill their expected service life; and
        v. would pose a safety hazard to individuals and their property once the Defect manifests.

2844925.1

498.    Generac's representations and omissions were material because they were likely to lead reasonable consumers to believe that they were purchasing and using Systems which were free of defects; were safely and reliably capable of power generation and managing electricity; of high quality; would not prematurely fail; were not a safety hazard; and came with a warranty that Generac would honor.

499.    Generac intended to mislead Plaintiffs and North Carolina Class Members and induce them to rely on its misrepresentations and omissions.

500.    Generac acted intentionally, knowingly, and maliciously to violate North Carolina's Unfair Trade Practices and Consumer Protection Laws, and recklessly disregarded Plaintiffs' and North Carolina Class Members rights.

501.    Generac knew of the defective nature of the Systems yet continued to sell and distribute the Systems.

502.    Generac's acts and omissions possessed the tendency or capacity to mislead or create the likelihood of deception.

503.    Generac knew or should have known that its Systems were defective, would fail prematurely, was not safely and reliably capable of managing electricity, and otherwise was not as warranted and represented by Generac.

504.    Generac's conduct and omissions described herein repeatedly occurred in their trade or business and were capable of deceiving a substantial portion of the consuming public.

505.    Generac's misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive and cause misunderstanding and/or in fact caused Plaintiffs and North Carolina Class Members to be deceived that the Systems would be backed by warranties of up to 25 years, and those warranties would in fact be honored by Generac.

506.     Generac's unlawful conduct is continuing, with no indication that it will cease.

507.     As a direct and proximate result of Generac's unfair, unlawful, and deceptive acts and practices, Plaintiffs and North Carolina Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and nonmonetary damages, including that the perpetration of further deception by Generac. Had they been aware of the Defect in the Systems, Plaintiffs and North Carolina Class Members either would have paid less for their Systems or would not have purchased them at all, or would have negotiated different terms of the warranty. Plaintiffs and North Carolina Class Members did not receive the benefit of their bargain as a result of Generac's misconduct.

508.     Plaintiffs and North Carolina Class Members have been damaged in an amount in excess of $25,000 and are entitled pursuant to N.C. Gen. Stat. § 75-16 to recover treble damages as well as attorneys' fees and costs. They seek all monetary and non-monetary relief allowed by law.

## OHIO

## COUNT XXIV
**VIOLATIONS OF OHIO'S CONSUMER SALES PRACTICES ACT**
**OHIO REV. CODE § 1345.01, *ET SEQ.***
**(On Behalf of Plaintiffs Ammon, Wasserman and the Ohio Class)**

509.     Plaintiffs Ammon and Wasserman reallege and incorporate by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

510.     Plaintiffs bring this claim on behalf of themselves and the Ohio Class.

511.     Plaintiffs and the Ohio Class Members are "consumers" as defined by the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 ("Ohio CSPA"). Generac is a "supplier" as defined by the Ohio CSPA. Plaintiff and the Ohio Class Members' purchases or leases of the Systems were "consumer transactions" as defined by the Ohio CSPA.

512.     The Ohio CSPA, Ohio Rev. Code § 1345.02, broadly prohibits unfair or deceptive acts or practices in connection with a consumer transaction. Specifically, and without limitation of the broad prohibition, the Act prohibits suppliers from representing (i) that goods have characteristics or uses or benefits which they do not have; (ii) that their goods are of a particular quality or grade if they are not; and (iii) the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not. Id. Generac's conduct as alleged herein constitutes unfair and/or deceptive consumer sales practices in violation of Ohio Rev. Code § 1345.02.

513.     In the course of business, Generac knew that the Systems were defectively designed and/or manufactured by reason of the aforesaid Defect, would fail prematurely, were not suitable for their intended use and were unsafe and unreliable. Yet, Generac concealed and suppressed material facts concerning the Systems, the Defect, its propensity to fail prematurely, and related risks as alleged above.

514.     Generac thus violated the Ohio CSPA by, at minimum, representing that the Systems have characteristics, uses, benefits, and qualities which they do not have; representing that the Systems are of a particular standard and quality when they are not; advertising the Systems with the intent not to sell them as advertised; and omitting material facts in describing the Systems.

515.     Generac engaged in misleading, false, unfair, and deceptive acts or practices that violated the Ohio OSPA by failing to disclose and actively concealing the nature of the Defect. Generac owed Plaintiffs and the Ohio Class Members a duty to disclose the existence of the Defect because:

    a.    Generac was in a superior position to know the true state of facts about the
          Defect and associated repair and Systems replacement costs;

    b.    Plaintiffs and the Ohio Class Members could not reasonably have been

2844925.1

expected to learn or discover that the Systems had the Defect until it manifested;

c.     Generac knew that Plaintiffs and the Ohio Class Members could not reasonably have been expected to learn about or discover the Defect and its associated repair and/or Systems' replacement costs; and

d.     Generac actively concealed the Defect, its causes, and resulting effects, by asserting to Plaintiffs and Ohio Class Members that their Systems failed for reasons other than the Defect.

516.     Whether or not the Systems work properly and safely is a fact a reasonable consumer would consider important in selecting a power generation system to purchase or lease. When Plaintiffs and the Ohio Class Members bought a System for personal, family, or household purposes, they reasonably expected they would not be defective, as more fully alleged herein.

517.     Generac's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs and the Ohio Class Member, about the safety and functional reliability of the Systems.

518.     Plaintiffs and the Ohio Class Members suffered ascertainable loss and actual damages as a direct and proximate result of Generac's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs and the Ohio Class Members who purchased or leased the Systems would not have purchased or leased them at all, if the Systems' true nature had been disclosed and/or would have paid significantly less for them. Plaintiffs and the Ohio Class Members also suffered diminished value of their Systems, as well as lost or diminished use and loss of power generation due to the Defect.

519.     The omissions and acts of concealment by Generac pertained to information that was material to Plaintiffs and the Ohio Class Members, as it would have been to all reasonable consumers

2844925.1

520.     Generac had an ongoing duty to all its customers to refrain from unfair and deceptive practices under the Ohio CSPA in the course of its business.

521.     As a direct and proximate result of Generac's violations of the Ohio CSPA, Plaintiffs and the Ohio Class Members have suffered injury-in-fact and/or actual damages.

522.     Generac's violations present a continuing risk to Plaintiffs and the Ohio Class Members, as well as to the general public. Generac's unlawful acts and practices complained of herein affect the public interest. Specifically: (1) the number of consumers affected by Generac's deceptive practices are in the tens of thousands nation-wide; (2) Generac has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Systems to Plaintiffs and individual Ohio Class Members; and (3) so long as the Systems continued to be sold and distributed, the likelihood of continued impact on other consumers is significant.

523.     Plaintiffs and members of the Ohio Class sustained damages as a result of Generac's unlawful acts and are, therefore, entitled to damages and other relief as provided under the Ohio CSPA.

524.     Plaintiffs and the Ohio Class Members also seek court costs and attorneys' fees as a result of Defendants' violations of the Ohio CSPA as provided in Ohio Rev. Code § 1345.09.

**COUNT XXV**
**BREACH OF IMPLIED WARRANTY IN TORT**
**BASED ON OHIO LAW**
**(On behalf of Plaintiffs Ammon, Wasserman, and the Ohio Class)**

525.     Plaintiffs Ammon and Wasserman reallege and incorporate by reference the allegations contained in all preceding paragraphs as though fully set forth at length therein.

526.     Plaintiffs bring this claim on behalf of themselves and the Ohio Class.

527.     Generac impliedly warranted that the Systems were of merchantable quality and fit for use. This implied warranty included, *inter alia*, the following: (i) a warranty that the System

2844925.1

were manufactured, supplied, distributed, and/or sold by Generac were safe and reliable for providing power generation; and (ii) a warranty that the Systems would be fit for their intended use—providing safe and reliable power generation while being operated.

528.    Generac breached the implied warranty of merchantability in that the defective Systems were not in merchantable condition when they were sold to Plaintiffs and Ohio Class Members and were and are unfit for the ordinary purposes for which such Systems are used because they pose a serious safety, and functional reliability risk as a means of power generation.

529.    Plaintiffs notified Generac of the Defect in the Systems within a reasonable time after experiencing a Defect. Generac has been provided notice of these issues by numerous complaints, as alleged herein.

530.    As a direct and proximate result of breaches of the implied warranty of merchantability, Plaintiffs and the Ohio Class Members have suffered damages, including but not limited to incidental and consequential damages.

531.    As a direct and proximate result of Generac's breach of the implied warranty of merchantability, Plaintiffs and the Ohio Class Members have been damaged in an amount to be proven at trial.

## OREGON

### COUNT XXVI
### VIOLATION OF OREGON'S UNFAIR TRADE PRACTICES ACT
### OR. REV. STAT. § 646.605, *ET SEQ.*
### (On Behalf of Plaintiff Helmers and the Oregon Class)

532.    Plaintiff Helmers realleges and incorporates by reference the allegations contained in the preceding paragraphs as though set forth fully herein.

533.    Plaintiff brings this claim on behalf of himself and the Oregon Class.

2844925.1

534. Plaintiff and the Oregon Class Members are "persons" within the meaning of Or. Rev. Stat. § 646.605(4).

535. Generac is engaged in "trade" or "commerce" within the meaning of Or. Rev. Stat. § 646.605(8).

536. The Oregon Unfair Trade Practices Act ("Oregon UTPA") prohibits "unfair or deceptive acts conduct in trade or commerce…." Or. Rev. Stat. § 646.608(1).

537. The acts, practices, misrepresentations, and omissions by Defendants described above, and Defendants' dissemination of deceptive and misleading advertising and marketing materials in connection therewith, occurring in the course of conduct involving trade or commerce, constitute unfair methods of competition and unfair or deceptive acts or practices within the meaning of the Oregon UTPA.

538. Defendants' acts and practices created a likelihood of confusion or of misunderstanding and misled, deceived, or damaged Plaintiff and the Oregon Class Members in connection with the sale or advertisement of the defective Systems.

539. Generac's conduct also constituted the use or employment of deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged in violation of the Oregon UTPA.

540. Specifically, Generac violated the Oregon UTPA by: (1) representing that the Systems have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Systems are of a particular standard, quality, and grade when they are not; (3) advertising the Systems with the intent not to sell them as advertised; and (4) failing to disclose information

concerning the Systems and concealing the Defect with the intent to induce consumers to purchase them.

541.     Generac knew or should have known that its conduct violated the Oregon UTPA.

542.     Plaintiff and the Oregon Class Members would not have purchased the Systems had the Defect been disclosed.

543.     Plaintiff and the Oregon Class Members suffered ascertainable loss and actual damages as a direct and proximate result of Generac's misrepresentations and concealment of the Defect and failure to disclose material information about Systems.

544.     Pursuant to Or. Rev. Stat. § 646.638, Plaintiff on behalf of himself and the other Oregon Class Members, seeks an order enjoining Generac's unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Oregon UTPA.

## PENNSYLVANIA

### COUNT XXVII
**VIOLATION OF PENNSYLVANIA'S UNFAIR TRADE PRACTICE AND CONSUMER PROTECTION LAW
73 P.S. §§ 201-1, *ET SEQ.*
(On Behalf of Plaintiffs Fawcett, Hemphill, Shirk, and the Pennsylvania Class)**

545.     Plaintiffs Fawcett, Hemphill, and Shirk hereby reallege and incorporate the allegations contained in all preceding paragraphs as though fully set forth herein.

546.     Plaintiffs bring this claim on behalf of themselves and the Pennsylvania Class.

547.     Plaintiffs and Pennsylvania Class Members are persons within the context of the Pennsylvania Unfair Trade Practice and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-2(2).

548.     Generac is a person within the context of the UTPCPL, 73 P.S. § 201-2(2).

2844925.1

549.     At all times relevant hereto, Generac was engaged in trade or commerce as defined under the UTPCPL, 73 P.S. § 201-2(3).

550.     Plaintiffs and Pennsylvania Class Members are "consumers" who purchased the Systems for personal, family or household use within the meaning of the UTPCPL, 73 P.S. §§ 201-2(2) and 201.9-2.

551.     The UTPCPL prohibits engaging in any "unfair or deceptive acts or practices in the conduct of any trade or commerce…." 73 P.S. § 201-3.

552.     Generac's conduct, as described herein, took place within the Commonwealth of Pennsylvania and constitutes unfair or deceptive acts or practices in the course of trade and commerce, in violation of §§ 201-2(4)(v), (vii), (ix), (xiv), and (xxi) of the UTPCPL, including:

    a.    Having extensive knowledge of the defective nature of the Systems and failing to disclose the Defect of the Systems to Plaintiffs Fawcett, Figueroa, Hemphill and Pennsylvania Class Members;

    b.    Representing the Systems as capable of safe and reliable power generation and management of electricity when they were not due to the Defect;

    c.    Conveying a warranty with the sale of its Systems when it does not intend to honor the warranty by replacing the defective Systems with non-defective Systems;

    d.    In failing to disclose to Plaintiffs and Pennsylvania Class Members that the Systems:

        i.    were defective;
        ii.    were not able to safely and reliably generate power and manage electricity;
        iii.    would prematurely fail;
        iv.    cannot be expected to fulfill their expected service life; and
        v.    would pose a safety hazard to individuals and their property once the Defect manifests.

2844925.1

553. Generac engaged in deceptive trade practices in violation of the UTPCPL by failing to disclose and actively concealing the Defect and the related risks posed by the defective Systems, including that they are a safety and functional unreliability risk and prone to premature failure.

554. Generac violated UTPCPL §§ 201-2(4)(v) and (vii) by representing that its Systems have characteristics or benefits that they do not have and that the Systems "are of a particular standard, quality or grade" when they are of another.

555. Generac advertised the Systems with intent not to sell them as advertised, in violation of UTPCPL § 201-2(4)(ix).

556. Generac engaged in fraudulent and/or deceptive conduct which creates a likelihood of confusion or of misunderstanding in violation of UTPCPL § 201-2(4)(xxi).

557. Further, Section 201-(4)(xiv) of the UTPCPL provides that it shall be unlawful in the sale of goods to fail to comply with the terms of any written warranty given to the buyer at or after a contract for the purchase of goods or services is made.

558. The conduct of Generac offends public policy as established by statutes and common law; is immoral, unethical, oppressive, and/or unscrupulous and caused avoidable and substantial injury to Plaintiffs and Pennsylvania Class Members (who were unable to have reasonably avoided damages through no fault of their own) without any countervailing benefits to consumers.

559. Generac's representations and omissions were material because they were likely to lead reasonable consumers to believe that they were purchasing and using Systems which were free of defects; were safely and reliably capable of power generation and managing electricity; of high quality; would not prematurely fail; were not a safety hazard; and came with a warranty that Generac would honor.

2844925.1

560.     Generac intended to mislead Plaintiffs and Pennsylvania Class Members and induce them to rely on its misrepresentations and omissions.

561.     Generac acted intentionally, knowingly, and maliciously to violate the UTPCPL, and recklessly disregarded Plaintiffs and Pennsylvania Class Members' rights.

562.     Generac owed Plaintiffs and Pennsylvania Class Members a duty to disclose the true quality of the Systems and the Defect because Generac: (a) possessed exclusive knowledge of the Defect and accompanying safety, reliability, and functionality risks; (b) intentionally concealed the foregoing from Plaintiffs, and Pennsylvania Class Members; and/or (c) made incomplete representations about the Systems generally, while withholding material facts from Plaintiffs and Pennsylvania Class Members that contradicted these representations.

563.     As a direct and proximate result of Generac's unlawful, unfair, and deceptive acts and practices, Plaintiffs and Pennsylvania Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages. Had they been aware of the Defect in the Systems, Plaintiffs and Pennsylvania Class Members either would have paid less for their Systems or would not have purchased them at all, or would have negotiated different terms of the warranty. Plaintiffs and Pennsylvania Class Members did not receive the benefit of their bargain as a result of Generac's misconduct.

**TENNESSEE**

**COUNT XXVIII**
**VIOLATION OF TENNESSEE'S CONSUMER PROTECTION ACT**
**TENN. CODE ANN. § 47-18-101, *ET SEQ.***
**(On Behalf of Plaintiff Edwards, Taylor, and the Tennessee Class)**

564.     Plaintiffs Edwards and Taylor reallege and incorporate by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

565.     Plaintiffs bring this claim on behalf of themselves and the Tennessee Class.

2844925.1

566. Plaintiffs and the Tennessee Class Members are "natural persons" and "consumers" within the meaning of Tenn. Code Ann. § 47-18-103(2).

567. Generac is a "person" within the meaning of Tenn. Code Ann. § 47-18- 103(2).

568. Generac's conduct complained of herein affected "trade," "commerce" or "consumer transactions" within the meaning of Tenn. Code Ann. § 47-18-103(19).

569. The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce," including but not limited to: "Representing that goods or services have … characteristics, [or] … benefits … that they do not have…;" "Representing that goods or services are of a particular standard, quality or grade… if they are of another;" and "Advertising goods or services with intent not to sell them as advertised." Tenn. Code Ann. § 47-18-104. Generac violated the Tennessee CPA by engaging in unfair or deceptive acts, including representing that the Systems have characteristics or benefits that they did not have while concealing their Defect; representing that the Systems are of a particular standard, quality, or grade when they are of another; and advertising the Systems with intent not to sell them as advertised.

570. Generac's actions, as set forth above, occurred in the conduct of trade or commerce.

571. In the course of its business, Generac concealed the Defect of the Systems, as well as the true nature of the Systems, and its failure to adequately design and test the Systems to ensure their safety and functional reliability as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Generac also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Systems.

572. By failing to disclose and by actively concealing the defect in the Systems, which it marketed as safe, reliable, and of high quality, Generac engaged in unfair and deceptive business practices in violation of the Tennessee CPA.

573. In the course of Generac's business, it willfully failed to disclose and actively concealed the safety and functionality, or operational unreliability and risks posed by the Defect in the Systems.

574. Generac's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Tennessee Class Members, about the true safety and reliability of their Systems.

575. Generac intentionally and knowingly misrepresented material facts regarding the Systems with the intent to mislead Plaintiffs and the Tennessee Class Members.

576. Generac knew or should have known that its conduct violated the Tennessee CPA.

577. As alleged above, Generac made material statements about the safety and functional and operational reliability of the Systems and their ability to reliably and safety generate power that were either false or misleading.

578. Generac owed Plaintiffs and the Tennessee Class Members a duty to disclose the truth about the Systems because Generac:

    a.    Possessed exclusive knowledge about the Defect in the Systems;

    b.    Intentionally concealed the foregoing from them; and

    c.    Made incomplete representations about the safety and reliability of the Systems, as alleged above, while purposefully withholding material facts from them that contradicted these representations.

579. Because Generac fraudulently concealed the Defect, as well as the true nature of the Systems, Plaintiffs and the Tennessee Class Members were deprived of the benefit of their

2844925.1

bargain since the Systems they purchased were worth less than they would have been if they were free from the Defect. Had owners been aware of the Defect in their Systems, they would have either not have bought them or would have paid less for them.

580. Generac's concealment of the Defect in the Systems was material to Plaintiffs and the Tennessee Class.

581. Plaintiffs and the Tennessee Class Members suffered ascertainable loss caused by Generac's misrepresentations and its concealment of and failure to disclose the Systems.

582. Generac's violations present a continuing risk to Plaintiffs as well as to the general public. Generac's failure to replace the Systems and its unlawful acts and practices complained of herein affect the public interest.

583. Pursuant to Tenn. Code § 47-18-109(a), Plaintiffs and the Tennessee Class Members seek monetary relief against Generac measured as actual damages in an amount to be determined at trial, treble damages as a result of Generac's willful or knowing violations, and any other just and proper relief available under the Tennessee CPA.

## TEXAS

### COUNT XXIX
### VIOLATIONS OF TEXAS'S DECEPTIVE TRADE PRACTICES ACT – CONSUMER PROTECTION ACT
### TEX. BUS. & COM. CODE §§ 17.41, *ET SEQ.*
### (On behalf of Plaintiff Venema and the Texas Class)

584. Plaintiff Venema realleges and incorporates by reference the allegations contained in all preceding paragraph as though fully set forth at length herein.

585. Plaintiff Venema brings this claim on behalf of herself and the Texas Class.

586. Plaintiff and the Texas Class are individuals, partnerships, or corporations with assets of less than $25 million (or are controlled by corporations or entities with less than $25 million in assets), see Tex. Bus. & Com. Code § 17.41, and are therefore "consumers," pursuant

to Texas Business and Commercial Code § 17.45(4). Generac is a "person" within the meaning of Texas Business and Commercial Code § 17.45(3).

587.    Generac is engaged in "trade" or "commerce" or "consumer transactions" within the meaning of Texas Business and Commercial Code § 17.46(a).

588.    The Texas Deceptive Trade Practices – Consumer Protection Act ("Texas DTPA") prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code § 17.46(a), and an "unconscionable action or course of action," which means an act or practice which, to a consumers detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code §§ 17.45(5) and 17.50(a)(3).

589.    In the course of their business, Generac knew that the Systems were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use. Yet, Generac concealed and suppressed material facts – the Defect – concerning the Systems and its related risks.

590.    Generac thus violated the Texas DTPA by, at minimum, representing that the Systems have characteristics, uses, benefits, and qualities which they do not have; representing that the Systems are of a particular standard and quality when they are not; advertising the Systems with the intent not to sell them as advertised; and omitting material facts in describing the Systems concealing their Defect.

591.    Generac engaged in misleading, false, unfair, and deceptive acts or practices that violated the Texas DTPA by failing to disclose and actively concealing the Defect.

592.    Generac owed Plaintiff and the Texas Class Members a duty to disclose the existence of the Defect because:

2844925.1

a.    Generac was in a superior position to know the true state of facts about the Defect and associated repair or Systems' replacement costs;

b.    Plaintiff and the Texas Class Members could not reasonably have been expected to learn or discover that the Systems were defective until manifestation of the Defect;

c.    Generac knew that Plaintiff and the Texas Class Members could not reasonably have been expected to learn about or discover the Defect and its associated repair costs; and

d.    Generac actively concealed the Defect, its causes, and resulting effects, by asserting to Plaintiff and Texas Class Members that their Systems failed for reasons other than due to the Defect.

593.    Whether or not the Systems work properly is a fact a reasonable consumer would consider important in deciding to purchase or lease them. When Plaintiff and the Texas Class Members bought or leased their Systems for personal, family, or household purposes, they reasonably expected they would not be defective.

594.    Generac's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiff, about the safety and reliability of the Systems.

595.    Plaintiff and the Texas Class suffered ascertainable loss and actual damages as a direct and proximate result of Generac's misrepresentations and its concealment of and failure to disclose material information – the Defect. Plaintiff and the Texas Class Members who purchased or leased the Systems would not have purchased or leased them at all if the Defect had been disclosed or would have paid significantly less for them. Plaintiff and the Texas Class Members also suffered diminished value of their vehicles, as well as lost or diminished use.

596.    The omissions and acts of concealment by Generac pertained to information that was material to Plaintiff and the Texas Class Members, as it would have been to all reasonable consumers.

2844925.1

597. Generac had an ongoing duty to all its customers to refrain from unfair and deceptive practices under the Texas DTPA in the course of its business.

598. Generac's violations present a continuing risk to Plaintiff as well as to the general public. Generac's unlawful acts and practices complained of herein affect the public interest.

599. Pursuant to Texas Business and Commercial Code § 17.50, Plaintiff and the Texas Class seek an order enjoining Generac's unfair and/or deceptive acts or practices, damages, multiple damages for knowing and intentional violations, pursuant to § 17.50(b)(1), punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Texas DTPA.

600. On September 1, 2023, Plaintiff Venema sent a letter complying with Texas Business and Commercial Code § 17.505(a).

## VIRGINIA

## COUNT XXX
### VIOLATION OF VIRGINIA'S CONSUMER PROTECTION ACT
### VA. CODE § 59.1-196, *ET SEQ.*
### (On Behalf of Plaintiffs Gibson, Matas, Morse and the Virginia Class)

601. Plaintiffs Gibson, Matas, and Morse hereby reallege and incorporate by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

602. Plaintiffs brings this claim on behalf of themselves and the Virginia Class.

603. Generac is a "supplier" as defined by Va. Code § 59.1-198.

604. Plaintiffs and Virginia Class Members are each a "persons" under Va. Code § 59.1-198.

605. The acts described herein constitute "consumer transactions" under Va. Code § 59.1-198.

2844925.1

606. The following constitute unlawful fraudulent acts or practices committed by a supplier in connection with a consumer transaction:

    a. Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits;

    b. Misrepresenting that goods or services are of a particular standard, quality, grade, style, or model;

    c. Advertising or offering for sale goods that are defective without clearly and unequivocally indicating in the advertisement that the goods are defective;

    d. Advertising goods or services with intent not to sell them as advertised; and

    e. Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction.

607. Generac's conduct, as described herein, took place within the state of Virginia and constitutes unlawful fraudulent acts or practices, including:

    a. Having extensive knowledge of the defective nature of the Systems and failing to disclose to Plaintiff and Virginia Class Members;

    b. Representing the Systems as capable of safe and reliable power generation and management of electricity when they were not due to the Defect;

    c. Conveying a warranty with the sale of its Systems when it does not intend to honor the warranty by replacing the defective Systems with non-defective Systems;

    d. In failing to disclose to Plaintiff and Virginia Class Members that the Systems:

        i. were defective;

        ii. were not able to safely and reliably and efficiently provide power generation and efficiently manage electricity;

        iii. would prematurely fail;

        iv. cannot be expected to fulfill their expected service life; and

        v. would pose a safety hazard to individuals and their property once the Defect manifests.

2844925.1

608.    Generac's representations and omissions were material because they were likely to lead reasonable consumers to believe that they were purchasing and using Systems which were free of defects; were capable of safely, reliably and efficiently providing and managing power generation and electricity; of high quality; would not prematurely fail; were not a safety hazard; and came with a warranty that Generac would honor.

609.    Generac intended to mislead Plaintiffs and Virginia Class Members and induce them to rely on its misrepresentations and omissions.

610.    Generac acted intentionally, knowingly, and maliciously to violate the Virginia Consumer Protection Act, and recklessly disregarded Plaintiffs and Virginia Class Members' rights.

611.    Generac owed Plaintiffs and Virginia Class Members a duty to disclose the true quality of the Systems because Generac: (a) possessed exclusive knowledge of the Defect and accompanying safety risks; (b) intentionally concealed the foregoing from Plaintiff and Virginia Class Members; and/or (c) made incomplete representations about the Systems generally, while withholding material facts from Plaintiff and Virginia Class Members that contradicted these representations.

612.    As a direct and proximate result of Generac's unlawful fraudulent acts and practices, Plaintiffs and Virginia Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages. Had they been aware of the Defect in the Systems, Plaintiffs and Virginia Class Members either would have paid less for their Systems or would not have purchased them at all, or would have negotiated different terms of the warranty. Plaintiffs and Virginia Class Members did not receive the benefit of their bargain as a result of Generac's misconduct.

2844925.1

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this case be certified and maintained as a class action pursuant to one or more of the proposed Classes or Classes, as they may be modified or amended, and respectfully requests that this Court:

    a.    Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

    b.    Appoint Plaintiffs as the representatives of the Class and their counsel as Class Counsel;

    c.    Award damages, including compensatory and exemplary damages, to Plaintiffs and all other Class Members;

    d.    Award Plaintiffs and Class Members actual damages sustained;

    e.    Award Plaintiffs and Class Members such additional damages, including statutory, punitive, and/or exemplary damages, over and above the amount of their actual damages, which are authorized and warranted by law;

    f.    Grant restitution to Plaintiffs and Class Members and require Generac to disgorge inequitable gains;

    g.    Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Generac to recall Systems and/or replace and repair the Defect and provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the Defect;

    h.    Award Plaintiffs and all Class Members punitive damages if discovery merits such an award;

2844925.1

     i.      Award Plaintiffs and all Class Members their reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

     j.      Award such other relief as this Court deems just and appropriate.

## <u>JURY TRIAL DEMANDED</u>

Plaintiffs demand a trial by jury on all issues so triable.


Dated: September 1, 2023          Respectfully submitted,

/s/ Scott C. Harris
Scott C. Harris*
MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, LLC
900 W. Morgan St.
Raleigh, NC 27603
Telephone: (919) 600-5000
Email: sharris@milberg.com

Ian J. Barlow*
KERSHAW TALLEY & BARLOW
401 Watt Ave. Ste. 1
Sacramento, CA 95864
Telephone: (916) 244-4829
Email: ian@ktblegal.com

Mark P. Chalos*
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
222 2nd Ave. South, Ste. 1640
Nashville, TN 37201
Telephone: (615) 313-9000
Email: mchalos@lchb.com

James J. Rosemergy*
CAREY DANIS & LOWE
8235 Forsyth Blvd., Ste. 1100
St. Louis, MO 63105
Telephone: (314) 725-7700
Email: jrosemergy@careydanis.com

Nola H. Cross**
CROSS LAW FIRM

2844925.1

845 N. 11th Street
Milwaukee, WI 53233
Telephone: (414) 616-3229
Email: njhcross@crosslawfirm.com

Stephen R. Basser***
BARRACK RODOS & BACINE
600 W Broadway Ste. 900
San Diego, CA 92101
Telephone: (619) 230-0800
Email: sbasser@barrack.com

Gary S. Graifman***
KANTROWITZ, GOLDHAMER &
GRAIFMAN, P.C.
135 Chestnut Ridge Rd. Ste. 200
Montvale, NJ 07645
Telephone: (201) 597-0074
Email: ggraifman@kgglaw.com

David G. Omer***
OMER LAW FIRM, PLLC
9131 Anson Way Ste. 205
Raleigh, NC 27615
Telephone: (919) 300-6070
Email: david@omerfirm.com

*Plaintiffs' Lead Counsel*
**Plaintiffs' Liaison Counsel*
***Plaintiffs' Steering Committee*